

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

NOS.     **2-08-366-CR**
         **2-08-367-CR**
         **2-08-368-CR**
         **2-08-369-CR**
         **2-08-370-CR**
         **2-08-371-CR**

EX PARTE JEFFREY HOLLIDAY
KARLSON

------------

FROM COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY

------------

## OPINION

------------

### Introduction

Appellant Jeffrey Holliday Karlson appeals the trial court's denials of his applications for writs of habeas corpus. We dismiss two of these six appeals for want of jurisdiction; we affirm the trial court's orders in the remaining cases.

**Background Facts**

In 2004, the State charged appellant with six crimes, including two assault offenses,[1] two drug offenses,[2] interference with an emergency call,[3] and unlawful restraint.[4] Appellant missed court appearances and forfeited bonds related to these charges in March and August 2004; officers rearrested him as a result of both of these forfeitures.

---

[1] A sworn police statement indicated that on an early morning in January 2004, appellant fought with Melanie Meredith, his roommate, and that during the fight, appellant pepper sprayed Meredith and struck her with a rubber mallet. Appellant claims that he acted in self-defense. Another statement alleged that in May 2004, appellant shoved, choked, and "body slammed" Lisa Marie James after she refused his advances and tried to leave his motel room. Appellant attached evidence to his habeas applications relating that he did not assault James and that he only detained her because he suspected that she had stolen some of his property.

[2] The State charged appellant with possession of a dangerous drug (Neurontin) and possession of a controlled substance (hydrocodone) based on the discovery of these substances after an officer stopped appellant's vehicle for expired registration, arrested appellant for outstanding warrants, and observed him "shuffling his feet around on the ground." Appellant attached an affidavit to his habeas applications stating that the drugs were not his; he also attached a sworn statement from a passenger in his vehicle indicating that the drugs did not belong to appellant, but instead belonged to another passenger, Katrina Lesperance. From the documents attached to his applications, appellant theorized that Lesperance stated the drugs belonged to appellant because she was being investigated by Child Protective Services and because she was under deferred adjudication community supervision for her own felony drug offense.

[3] The State alleged that following the May 2004 alleged assault of James, appellant refused to admit responding officers into his motel room.

[4] The unlawful restraint charge also concerned the May 2004 assault.

In September 2004, while in custody, appellant submitted letters to the Denton county and district clerks[5] stating that he wanted to "fire [his] current attorney," Carey Piel, because Piel allegedly refused to visit appellant to discuss his cases, discussed cases with and accepted payment from appellant's father without appellant's permission, and had a "defeatist attitude" aimed at coercing appellant to accept a plea bargain. On the same day the county clerk filed appellant's letter, appellant (with the assistance of Piel) entered no contest pleas to the two drug offenses, one of the assault offenses, and the unlawful restraint charge. The trial court found appellant guilty of the four offenses and sentenced him to 180 days' confinement on each offense; it suspended the sentences for twenty-four months while it placed appellant on community supervision.

Based on his no contest pleas to those four charges, appellant filed pleas in bar to prosecution of the two remaining charges—the January 2004 assault and the interference with the May 2004 emergency call—under section 12.45 of the penal code. *See* Tex. Penal Code Ann. § 12.45 (Vernon 2003) (stating that the trial court can take unadjudicated offenses into consideration during punishment and that after doing so, with the State's consent, prosecution of

---

[5] The county clerk filed the letter in one of appellant's assault cases; it does not appear in the record of the other five cases subject to this appeal.

3

such offenses is barred). On September 16, 2004, the trial court, acting in accordance with the State's recommendation, sustained appellant's pleas in bar and ordered the prosecution of these two charges barred with prejudice.

In August 2008, appellant filed applications for writs of habeas corpus in each of his six cases, alleging that he received ineffective assistance from Piel and that his pleas were involuntary.[6] Appellant attached sworn statements to his applications that averred to the following summarized facts.

---

[6] He therefore claimed violations of his federal and state constitutional rights. In the four cases in which he received convictions, appellant filed the applications pursuant to article 11.072 of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 11.072 (Vernon 2005). Article 11.072 provides an opportunity for habeas corpus relief for defendants who challenge a conviction that resulted in community supervision. *Id.* § 2(b)(1); *see Ex parte Cummins*, 169 S.W.3d 752, 757 (Tex. App.—Fort Worth 2005, no pet.). In the two cases in which the trial court sustained appellant's pleas in bar to prosecution, he filed the applications under articles 11.05, 11.09, and 11.16. *See* Tex. Code Crim. Proc. Ann. arts. 11.05, 11.09, 11.16 (Vernon 2005). Appellant's applications differ slightly in their discussion of the charges underlying each of the six cases as well as the attached documents related to those charges, but Piel's alleged wrongful conduct, as discussed herein, commonly formed the basis for relief in each application. For this reason, we will summarize the relevant facts alleged in each application, but we will consider the applications together to determine whether the trial court's denials of the applications should be affirmed.

**Appellant's allegations**

In early 2004, appellant retained Piel and met with him several times to discuss appellant's pending charges.[7] During these discussions, appellant told Piel that he was not interested in any plea bargain, and Piel told appellant that he would provide an "aggressive legal defense," including filing a motion to suppress evidence related to the drug cases and using a non-prosecution statement from Meredith to gain dismissal of one of the assault cases. Appellant told Piel to file the motion to suppress (and agreed to pay an increased fee to Piel for the motion); he also succeeded in persuading Meredith to sign a non-prosecution statement and told Piel about Meredith's willingness to do so.

In subsequent meetings between he and appellant, Piel discussed the State's plea offers and the potential that appellant could be placed on community supervision; however, when appellant reiterated that he wanted to contest the charges through a trial, Piel reaffirmed that he would file the motion to suppress and engage in an aggressive defense. In May 2004, Piel informed appellant for the first time that the district attorney's office would not dismiss

---

[7] Appellant's affidavit asserts that Piel advertised his specialization in assault cases and that Piel expressed that he also had experience in defending against drug charges.

the assault charge against Meredith based on a non-prosecution statement; however, Piel told appellant that the assault case was triable because of "mistakes the police made." Appellant asked Piel why he still had not filed the motion to suppress, and he told Piel to either file the motion or return the portion of Piel's fee related to it. Piel responded by telling appellant that if he filed the motion, it would harm appellant's chances for a favorable plea bargain. Appellant again stated he was not interested in pleading guilty, then Piel said that filing the motion to suppress would be futile and that appellant would lose.

On May 28, 2004, appellant called Piel from jail after police arrested him for his second assault charge. Piel was disgusted to learn about appellant's new arrest, and when appellant explained that he had been "maced," Piel responded that appellant "probably deserved it." Piel persuaded appellant's father to not post appellant's bail; thus, appellant remained in confinement. When appellant later met with Piel, Piel told him that he had to enter into a plea bargain because there were "too many charges." Appellant maintained his innocence of the charges arising from the May 28, 2004 arrest, but Piel "didn't care and now [appellant] knew that [he] had to get another attorney or [he] would be convicted." University of North Texas legal advisor Kathryn McCauley referred appellant to Jason Jacoby, an attorney who did not have the "hopeless, defeatist attitude" that Piel had. However, appellant did not have

6

money to pay Jacoby's retainer fee, and appellant's father also would not pay Jacoby.[8]

In August 2004, after appellant missed a court date and forfeited his bail bond, his father and a detective allegedly conspired to have appellant rearrested. Appellant's father refused to secure a bond for appellant so that appellant would accept a plea bargain because appellant's father "had been influenced against him" by Piel. On August 24, 2004, Piel visited appellant and asked him to sign a power of attorney that assigned all of appellant's legal rights to his father.[9] At that time, appellant and Piel had an argument in which appellant accused Piel of being a "set up man" who only wanted to pursue plea bargains. Appellant realized that he "had lost complete control of [Piel] over to [his] father," who paid Piel's fees without appellant's permission.

After the August 24, 2004 meeting, appellant only saw Piel at court appearances; Piel refused to return his calls or come to the jail for visits. Piel

---

[8] Jacoby was later appointed as appellant's attorney on a fraudulent use of identifying information charge that is not subject to this appeal. Appellant contends that without his permission, Piel replaced Jacoby to represent him on this charge and that Piel similarly replaced another attorney on a misdemeanor marijuana charge without his permission.

[9] Copies of a general power of attorney that appointed appellant's father to handle all of appellant's "financial and business affairs" are attached to appellant's habeas applications. The general power of attorney indicated that it could be revoked by filing documents with the county clerk.

told appellant that he could not win at trial and that he was guilty. Appellant wanted Piel to withdraw as counsel, but Piel refused, stating that he worked for appellant's father, rather than appellant. When appellant and Piel had strategic disagreements, appellant's father threatened to "disinherit and disown" appellant unless he obeyed Piel. Eventually, Piel presented a plea bargain to appellant, and appellant accepted the plea bargain because the court "took no action on [his] letters requesting that Piel be discharged" and because Piel refused to pursue the motion to suppress or request a contested trial.

Jacoby submitted a sworn statement (that appellant attached to his habeas applications) confirming McCauley's referral, appellant's expressed unhappiness and disagreements with Piel, appellant's father's involvement in retaining Piel, and Piel's substitution for Jacoby on the fraudulent use of identifying information charge. Specifically, Jacoby stated that Piel was upset that Jacoby had been appointed to appellant's fraudulent use of identifying information case and that Piel opined that appellant did not need a court appointed lawyer. Finally, Jacoby stated that he recalled going to visit appellant in the jail to tell him that he was no longer appellant's lawyer on that case, and he remembered how disappointed appellant was that "Piel was back on his case."

Appellant's father also submitted a statement that detailed appellant's disagreements with Piel and appellant's desire to discharge him. The statement confirmed the following:

- appellant told his father that he was innocent of the charges brought against him and that he wanted to enter not guilty pleas;

- appellant was "disenchanted" with Piel and wanted to discharge him because appellant was concerned that Piel was not willing to contest appellant's charges;

- appellant's father paid Piel's fees after appellant instructed him not to do so because appellant's father believed that Piel was "well connected with the district attorney's office" and could best represent appellant;

- appellant's father asked Piel to draft a power of attorney so that appellant's father could manage appellant's affairs, and appellant's father used this power of attorney to threaten appellant for not following Piel's advice by entering a plea bargain;

- Piel consistently desired to have appellant take a plea bargain, while appellant consistently desired to contest the charges;

- Piel discussed confidential information with appellant's father; and

- appellant entered his no contest pleas "as a result of joint pressure on him" caused by his father's and Piel's desires.

Appellant also attached other affidavits to his applications concerning the incidents giving rise to the offenses to which he entered no contest pleas and the defenses he would have used at trial related to those charges.

9

**Piel's response**

In September 2008, the trial court ordered that a hearing on appellant's habeas applications be conducted by affidavit, and it required Piel to prepare a response to appellant's allegations. Piel's affidavit stated that though he and appellant had disagreements, appellant continued to want Piel to be his attorney. Specifically, Piel's affidavit acknowledged,

> [appellant] told me he did not want me to represent him several times. And then he told me he *did* want me to represent him. He would appear angry with me one minute, and then he would flip-flop back to wanting me to represent him again. From what I could tell, he treated his father the same way—wanting his help one moment, and not wanting it the next. Overall, there was never any doubt as to the fact that he wanted me to represent him and his father to participate in his defense.

Among other things, Piel's affidavit also explained that

- appellant gave consent for Piel's substitution for Jacoby on appellant's fraudulent use of identifying information case, and appellant only filled out indigence forms because that signaled "his way of blaming [Piel] and everyone else for his trouble";

- appellant's September 2004 letter to the court signified his "petulant way of always going back and forth" on the issue of Piel's representation;

- appellant approved of Piel taking money from and discussing the cases with appellant's father, though Piel "did not go into much detail" with appellant's father about appellant's cases;

- contrary to the affidavits submitted by appellant, Piel never told appellant that he worked for his father instead of him;

- appellant and his father both asked Piel to prepare the power of attorney;

10

- no viable argument existed that evidence of the drugs should have been suppressed (because appellant did not complain of any illegal search but only contended that he was not adequately linked to the drugs), and appellant did not pay Piel any money specifically earmarked for a suppression motion;

- appellant's drug cases were poor candidates for trial because (1) Piel believed that under cross-examination, appellant's temper "would flair up and his manic, crazed personality would be revealed to the jury," (2) the jury would not believe testimony from a "druggie-friend witness," and (3) an officer believed he saw appellant kicking at the drugs on the ground;

- appellant never told Piel that the drugs were not his; and

- while appellant desired initially to plead not guilty, and expressed this desire in a "crazed, manic manner," Piel did not force appellant to plead guilty, Piel and appellant "always reached agreement on a course of action," and appellant decided to plead no contest after carefully considering Piel's advice.

**The trial court's decision**

On September 26, 2008, the State filed proposed findings of fact and conclusions of law.[10] On October 6, 2008, the trial court denied appellant's habeas applications and adopted the findings of fact and conclusions of law that the State had submitted. The trial court found that Piel's affidavit was "more credible" than the affidavits attached to appellant's habeas applications, and it concluded that appellant failed to demonstrate that Piel afforded

---

[10] The State made such a filing in each of the six cases, though the proposed findings contained in each case and the documents attached to the findings slightly differ in relation to the specific charges at issue.

11

ineffective assistance or that his pleas were involuntary. Appellant objected to the findings of fact (contending that the evidence attached to his habeas applications contradicted Piel's affidavit) and conclusions of law and filed his notices of these appeals.

## Jurisdiction

When a trial court lacks jurisdiction to consider a habeas application, we also have no jurisdiction to consider the same. *See Dahesh v. State*, 51 S.W.3d 300, 303 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). In two of appellant's cases, in which the trial court barred prosecution, appellant filed habeas applications under articles 11.05, 11.09, and 11.16 of the code of criminal procedure.[11] *See* Tex. Code Crim. Proc. Ann. arts. 11.05, 11.09, 11.16. These articles respectively state,

> The Court of Criminal Appeals, the District Courts, the County Courts, or any Judge of said Courts, have power to issue the writ of habeas corpus; and it is their duty, upon proper motion, to grant the writ under the rules prescribed by law.

*Id.* art. 11.05.

---

[11] He also filed the applications under two sections of the Texas Constitution. *See* Tex. Const. art. V, §§ 8, 16. These sections generally relate to the jurisdiction of district and county courts. *Id.*

12

> If a person is confined on a charge of misdemeanor,[12] he may apply to the county judge of the county in which the misdemeanor is charged to have been committed, or if there be no county judge in said county, then to the county judge whose residence is nearest to the courthouse of the county in which the applicant is held in custody.

*Id.* art. 11.09.

> A judge of the district or county court who has knowledge that any person is illegally confined or restrained in his liberty within his district or county may, if the case be one within his jurisdiction, issue the writ of habeas corpus, without any motion being made for the same.

*Id.* art. 11.16.

For a court to have jurisdiction over a habeas application in a misdemeanor case under section 11.09, an applicant must be "confined" or "restrained" by either an accusation or a conviction. *See Ex parte Schmidt*, 109 S.W.3d 480, 483 (Tex. Crim. App. 2003); *Ex parte Rinkevich*, 222 S.W.3d 900, 902 (Tex. App.—Dallas 2007, no pet.); *Dahesh*, 51 S.W.3d at 302. Collateral consequences related to a conviction, such as exclusion from military service or use of the conviction to enhance punishment in other cases, may constitute confinement. *Ex parte Crosley*, 548 S.W.2d 409, 410 (Tex. Crim. App. 1977); *see State v. Collazo*, 264 S.W.3d 121, 126 (Tex. App.—Houston

---

[12] Both of the cases in which the court barred prosecution of appellant were misdemeanors.

13

[1st Dist.] 2007, pet. struck) (noting that "the fact that [an applicant] is not physically confined does not preclude his application or deprive the trial court of jurisdiction"); *Ex parte Davis*, 748 S.W.2d 555, 558 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd).

We sent appellant a letter expressing our concern that because the trial court barred prosecution against him in two of the six cases subject to this appeal, we had no jurisdiction over his applications in those two cases.[13] Appellant filed a response to our letter, contending that though prosecution had been barred pursuant to section 12.45 of the penal code, he was subject to having the cases offered in "any future sentencing hearing as part of his prior criminal history in an effort by the State to obtain a more severe sentence, because a Plea in Bar is the equivalent in law to being found guilty of the offense and becomes part of the defendant's 'criminal history.'" Section 12.45 states:

> (a) A person may, with the consent of the attorney for the state, admit during the sentencing hearing his guilt of one or more unadjudicated offenses and request the court to take each into account in determining sentence for the offense or offenses of which he stands adjudged guilty.

---

[13] We have found no cases directly considering whether a court has jurisdiction to consider a habeas claim related to an offense in which prosecution has been barred under section 12.45.

14

(b) Before a court may take into account an admitted offense over which exclusive venue lies in another county or district, the court must obtain permission from the prosecuting attorney with jurisdiction over the offense.

(c) If a court lawfully takes into account an admitted offense, prosecution is barred for that offense.

Tex. Penal Code § 12.45.

For his proposition that a conviction barred under section 12.45 may nonetheless be used as evidence in sentencing within future cases, appellant relies in part on *Perea v. State*, 870 S.W.2d 314, 318 (Tex. App.—Tyler 1994, no pet.). In *Perea*, the Tyler Court of Appeals held that when a defendant's prosecution is barred under section 12.45 of the penal code, the barred offense is still "part of a defendant's prior criminal record and become[s] a judgment of conviction." *Id.*; *see also Woodard v. State*, 931 S.W.2d 747, 750 (Tex. App.—Waco 1996, no pet.).

However, in *Lopez v. State*, the Court of Criminal Appeals unanimously disapproved of the *Perea* decision, calling the Tyler court's logic "faulty." 253 S.W.3d 680, 686 (Tex. Crim. App. 2008). In *Lopez*, the court considered whether an offense barred under section 12.45 could be used as impeachment evidence under rule of evidence 609(a), which states,

For the purpose of attacking the credibility of a witness, *evidence that the witness has been convicted of a crime* shall be admitted if elicited from the witness or established by public record but only if

15

the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.

Tex. R. Evid. 609(a) (emphasis added); *Lopez*, 253 S.W.3d at 684–85. The court noted that a "conviction" is a "judgment or sentence that the accused is guilty as charged." *Lopez*, 253 S.W.3d at 685. The court then held that an offense barred under section 12.45 is not a conviction; it also cast serious doubt on whether such an offense is, as appellant asserts, part of a defendant's "prior criminal record":

> "Prior criminal record" did then and does now include matters other than "final convictions." Even if § 12.45 offenses were part of a defendant's "prior criminal record," that fact would not make them "final convictions" for the purpose of Rule 609. Moreover, this Court's comment in *Whalon* with respect to the § 12.45 offense being part of the prior criminal record was mere *dicta* that was phrased not even as a positive statement, but as a question.

> Finally, we observe that the § 12.45 procedure can be implemented only if the State consents. If the State wishes to have the use of that extraneous offense as a prior conviction, it has another option: it can seek a conviction on the extraneous offense.

*Id.* at 686 (footnotes omitted); *see Whalon v. State*, 725 S.W.2d 181, 195 (Tex. Crim. App. 1986); *see also* Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1) (Vernon Supp. 2008) (allowing evidence of a defendant's "prior criminal record" to be admitted at sentencing).

16

We agree with and are bound by the Court of Criminal Appeal's recent implication that offenses barred under section 12.45 are neither convictions nor part of a defendant's prior criminal record. *See Lopez*, 253 S.W.3d at 686. We thus hold that such offenses have no sufficient collateral consequences to comprise "confinement" or "restraint," that such offenses can be classified neither as an "accusation" nor a "conviction," and that we are consequently without jurisdiction to consider habeas applications related to such barred offenses. *See* Tex. Code Crim. Proc. Ann. art. 11.09; *Schmidt*, 109 S.W.3d at 483; *Dahesh*, 51 S.W.3d at 303. Therefore, we dismiss the two appeals in which prosecution was barred pursuant to section 12.45, cause numbers 2-08-366-CR and 2-08-367-CR, for want of jurisdiction. *See* Tex. R. App. P. 43.2(f). We will proceed to consider the merits of the habeas appeals of the remaining four cases.

## Standard of Review

Absent a clear abuse of discretion, we must affirm the trial court's decision on whether to grant the relief requested in a habeas corpus application. *Ex parte Bruce*, 112 S.W.3d 635, 639 (Tex. App.—Fort Worth 2003, pet. dism'd). In reviewing the trial court's decision, we view the evidence in the light most favorable to the ruling and accord great deference to the trial court's findings and conclusions. *Id.*; *see Ex parte Amezquita*, 223 S.W.3d 363, 367

17

(Tex. Crim. App. 2006); *Ex parte Okere*, 56 S.W.3d 846, 854 (Tex. App.—Fort Worth 2001, pet. ref'd) (explaining that in "reviewing a trial judge's decision to grant or deny relief on a writ of habeas corpus, we afford almost total deference to a trial judge's determination of the historical facts supported by the record"). Such deference must be given even when all of the evidence is submitted by affidavits. *See Ex parte Wheeler*, 203 S.W.3d 317, 325–26 (Tex. Crim. App. 2006); *Manzi v. State*, 88 S.W.3d 240, 244 (Tex. Crim. App. 2002) (holding that in reviewing the denial of a motion to suppress evidence, the appellate court "correctly employed a deferential standard of review of the trial court's resolution of the historical facts from conflicting affidavits"). In a writ of habeas corpus hearing, the burden is on the applicant to prove his factual allegations by a preponderance of the evidence and to demonstrate that an error contributed to his conviction or punishment. *Ex parte Williams*, 65 S.W.3d 656, 658 (Tex. Crim. App. 2001); *Bruce*, 112 S.W.3d at 639.

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App.

18

2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63.

To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair and reliable trial. *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant

19

must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070. To prevail in a habeas proceeding, the applicant must establish both elements of the *Strickland* test by a preponderance of the evidence. *See Okere*, 56 S.W.3d at 856.

No contest pleas must be made freely and voluntarily. *See* Tex. Code Crim. Proc. Ann. art. 26.13(b) (Vernon Supp. 2008). A defendant's plea is not voluntary when it results from ineffective assistance of counsel. *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980). The test for determining the validity of a plea is whether the plea represents a voluntary and intelligent choice among alternative courses of action open to the defendant. *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366, 369 (1985). As explained in *Kniatt v. State*, a plea,

> to be consistent with due process of law, must be entered knowingly, intelligently, and voluntarily. To be "voluntary," a guilty plea must be the expression of the defendant's own free will and must not be induced by threats, misrepresentations, or improper promises. A defendant's sworn representation that his guilty plea is voluntary "constitute[s] a formidable barrier in any subsequent collateral proceedings." An applicant seeking habeas corpus relief

20

> on the basis of an involuntary guilty plea must prove his claim by a preponderance of the evidence. An applicant's delay in seeking habeas corpus relief may prejudice the credibility of his claim.

206 S.W.3d 657, 664 (Tex. Crim. App.) (citations omitted), *cert. denied*, 549 U.S. 1052 (2006). When a defendant challenges the voluntariness of a plea based on the advice of counsel, alleging that counsel was ineffective, the defendant has the burden to show that (1) counsel's performance fell below a reasonable standard of competence, and (2) the defendant would, with a reasonable probability, have pled not guilty and insisted on going to trial had counsel not committed the alleged errors. *Ex parte Moody*, 991 S.W.2d 856, 857–58 (Tex. Crim. App. 1999).

**Analysis**

Appellant contends that the evidence attached to his habeas applications, as related above, demonstrates that Piel's assistance in advising him to enter his no contest pleas was so deficient that it was legally ineffective and that his pleas were therefore involuntary. Specifically, appellant asserts that he persistently informed Piel that he wanted to plead not guilty to each of his charges, informed him of his desire for a jury trial, informed him of his desire to attempt to suppress evidence, instructed him not to accept fees from his father, and eventually informed him that he did not want his representation, but that Piel induced him to enter pleas of no contest (through a lack of other

21

options caused by Piel's alleged inaction in preparing a legal or factual defense and through Piel's preference of appellant's father's desires over appellant's own desires).

If these allegations were true, appellant's claims would likely have merit. However, Piel's affidavit provided the trial court with evidence either rebutting or explaining each of these allegations. Particularly, Piel's affidavit furnished the trial court a basis to conclude that though appellant vacillated on whether he wanted Piel's representation and though he wrote a letter expressing his desire to fire Piel shortly before entering his plea bargain, appellant accepted Piel's representation and carefully listened to and agreed with Piel's strategic reasoning[14] at the time he entered his pleas, thus making an intelligent choice among the alternative courses of action.[15]  *Hill,* 474 U.S. at 56, 106 S. Ct. at

---

[14] Piel opined, "[appellant] would not have been a believable witness, and based on the police reports, my experience, and [appellant's] demeanor, I believed that [appellant] would have to testify to make the points that he would want to make in a trial."  Piel further explained, "[appellant's] testimony, in my experience, would have been an unmitigated disaster.  I *knew* under cross-examination that his temper would flair up and his manic, crazed personality would be revealed to the jury.  We would lose the trial badly."

[15] Piel stated, "I had numerous discussions with [appellant] about his pleas, he knew what he was doing, I never pressured him, and he chose to plead the way he pleaded."  Piel further related, "I always bluntly shared my beliefs with [appellant] and, in the end, we agreed as to how he should plead."  Finally, Piel explained, "I have no doubt that, at some point, [appellant] told me that he wanted to go to trial," but "when he would calm down and we would discuss negotiating his cases with the DA for the best deal he could get,

369. Piel's affidavit also provided the trial court with a reason to determine that, contrary to appellant's affidavit and his father's sworn statement, appellant approved of (1) Piel's substitution for Jacoby on appellant's subsequent felony case, (2) Piel's discussion of cases with and acceptance of payment from appellant's father, and (3) the preparation of the power of attorney.

When faced with conflicting evidence[16] about the circumstances affecting Piel's representation and the voluntariness of appellant's pleas, the trial court was required to resolve the conflict and make a judgment call. *See* Tex. Code Crim. Proc. Ann. art. 11.072 § 6(a) (requiring the trial court to make a decision on a habeas application in a community supervision case within sixty days of the state filing its answer); *Hall v. State*, 160 S.W.3d 24, 40 (Tex. Crim. App.

---

[appellant] and I always reached agreement on a course of action. I never made him do anything."

[16] While Piel's affidavit conflicts with appellant's affidavit and his father's statement, it does not in large part necessarily conflict with Jacoby's statement. Jacoby's statement essentially conveyed that appellant was unhappy with Piel and wanted to contest his charges and that Piel substituted for him on appellant's fraudulent use of identifying information case. Piel's affidavit concedes that appellant was often unhappy with him, that at some point, appellant also told him that he wanted to contest his charges, and that he replaced Jacoby, albeit with appellant's consent. Also, Piel's expression that appellant weighed his strategic options and chose to enter his pleas without pressure impliedly rebuts appellant's contention that he entered his pleas because of threats that his father would disinherit him.

2004) (explaining that where there was conflicting evidence regarding mental retardation, the "trial judge, who presided over the trial and the habeas proceedings, was in the best position to evaluate the conflicting evidence"). In doing so, it found Piel's affidavit to be more credible than those submitted by appellant; because we cannot conclude that the trial court abused its discretion in this regard, we will defer to its determination. *See Amezquita*, 223 S.W.3d at 367; *Bruce*, 112 S.W.3d at 639; *Okere*, 56 S.W.3d at 854.

Further, along with Piel's affidavit, the trial court could have relied on other documents to discredit the allegations contained in appellant's applications. First, appellant affirmed in writing that he made his pleas "freely and voluntarily" and that he understood the "consequences of [his] plea[s]." As noted above, such statements comprise a formidable barrier to a subsequent challenge regarding the voluntariness of the pleas. *See Kniatt*, 206 S.W.3d at 664; *Labib v. State*, 239 S.W.3d 322, 332 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (explaining that an "accused who attests when he enters his plea . . . that he understands the nature of his plea and that it is voluntary has a heavy burden . . . to show that his plea was involuntary"). Next, appellant was properly admonished in accordance with article 26.13 of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 26.13(a). Receiving such admonishments created a prima facie showing that appellant's plea was

24

entered voluntarily. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998); *Jackson v. State*, 139 S.W.3d 7, 14 (Tex. App.—Fort Worth 2004, pet. ref'd). Finally, documents attached to the findings of fact and conclusions of law adopted by the court indicated that in 2005, while entering another plea bargain in another case with Piel's assistance, appellant affirmed that he was "satisfied with [Piel's] services."

For all of these reasons, viewing the evidence in the light most favorable to the trial court's ruling and according the trial court great deference, we hold that the trial court did not abuse its discretion by denying appellant's habeas applications, by ruling that Piel's representation was not legally deficient, or by concluding that appellant's pleas were voluntary. *See Bruce*, 112 S.W.3d at 639.

## Conclusion

Having determined that we lack jurisdiction to consider the appeals in cause numbers 2-08-366-CR and 2-08-367-CR, we dismiss those appeals.

Having also decided that the trial court did not abuse its discretion by denying appellant's applications for writs of habeas corpus in the remaining cases, we affirm the trial court's orders in those cases.

TERRIE LIVINGSTON
JUSTICE

PANEL:  LIVINGSTON, GARDNER, and WALKER, JJ.

PUBLISH

DELIVERED:  February 19, 2009

26