02-11-073-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-11-00073-CR

 

 


 
 
 Ex parte Dionne Collins
 
 


 

 

----------

FROM THE 371st
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Appellant
Dionne Collins appeals the trial court’s denial of article 11.072 habeas corpus
relief.[2]  Because the trial court
did not clearly abuse its discretion, we affirm the trial court’s denial of
habeas corpus relief.

Appellant
entered her written plea of guilty in open court, pursuant to a plea agreement,
to the second-degree felony offense of sexual assault of a child under
seventeen years of age.  The trial court accepted the plea, and, pursuant to
the plea agreement, placed Appellant on deferred adjudication for seven years. 
Appellant did not appeal.  Subsequently, Appellant filed an application for
writ of habeas corpus pursuant to article 11.072 of the code of criminal procedure,[3]
contending that trial counsel failed to advise her of the elements of the
offense of sexual assault of a child by causing her husband’s penis to contact
the female sexual organ of her daughter; that trial counsel failed to advise
her that, in order to be guilty of the offense, she would have had to aid,
assist, abet, encourage, solicit, or direct her husband to commit the offense;
that counsel failed to explain to her how or why she was guilty of the offense;
that counsel failed to advise her that she had a viable defense; that counsel
failed to familiarize himself with the applicable law; and that counsel failed
to investigate the case.  She argued that her guilty plea should be set aside as
involuntary because trial counsel provided ineffective assistance of counsel.

Habeas
corpus is an extraordinary writ used to challenge the legality of one’s
restraint.[4] 
Absent a clear abuse of discretion, we must affirm the trial court’s decision
on whether to grant the relief requested in a habeas corpus application.[5]  In reviewing the
trial court’s decision, we view the evidence in the light most favorable to the
ruling and accord great deference to the trial court’s findings and
conclusions, so long as the factual findings are supported by the record.[6]

No
live hearing was held on Appellant’s application for habeas relief, but the
trial court considered evidence presented through affidavits.  The complainant
in the underlying case stated that she had told her mother, Appellant, that her
stepfather was “messing” with her, but then she had told her mother that it was
not true and that the father of her four aborted fetuses was not her
stepfather.  The complainant told Appellant that the complainant had been
acting out and engaging in sexual activity with boys near her age and that they
had fathered the fetuses.  Appellant admitted that her daughter had told her
what her stepfather was doing but that she did not believe her daughter.  Appellant
also admitted that she had taken her daughter into a medical facility for
abortions.  No one suggested that Appellant had forced or encouraged either her
daughter or her husband to engage in the sexual activity.

Trial
counsel provided a detailed affidavit that the trial court believed contained a
true recitation of the facts and events leading up to the guilty plea.  Trial
counsel said, and the trial court found, that he investigated the case and was
familiar with applicable law.  He received discovery through the district
attorney’s open file policy.  He met with Appellant and with the prosecutor and
was trying to work out an agreement that Appellant would testify for the State
in the husband’s case and, by testifying, avoid prosecution altogether. 
Appellant told trial counsel that she knew nothing of the sexual assaults.  After
the husband’s case went to trial without Appellant testifying, trial counsel
arranged for Appellant to be polygraphed.  Trial counsel was not allowed to be
present during the pretest interview, but Appellant came out of the office
distraught and unable to participate in the polygraph.  Trial counsel also arranged
for her to be examined by Dr. Raymond Finn, a psychologist.  Dr. Finn said that
Appellant might very well not have consciously admitted to herself that she
knew of the assaults, and he also said that she showed classic signs of being
the victim of spousal abuse.

Appellant
and trial counsel agreed that she had paid him only $600.  She complained that
he did not meet with her often enough, but she did not explain what would have
been accomplished by meeting more often.  She went to his office once, and they
met approximately once a month when she had court settings.  Trial counsel
asked the trial court to hold that Appellant was indigent and to allow her a
free record of her husband’s trial, a court-appointed investigator, and
appointed counsel.  The trial court agreed to do so but pointed out that trial
counsel was not on the felony appointment wheel and could not be appointed to
represent Appellant.  Trial counsel agreed to continue to assist Appellant and
appointed counsel pro bono so that Appellant could receive a free record and an
appointed investigator.  The State had offered to allow her to plead guilty in
exchange for seven years’ deferred adjudication without being placed on the sex
offender caseload.  Trial counsel continued to prepare for trial.

Appellant,
on the other hand, wanted him to guarantee the result of a jury trial.  When
trial counsel refused Appellant’s request for guarantees, she told him that she
did not want the record of her husband’s trial, an investigator, or another
lawyer.  She said that trial counsel had told her that her daughter was going to
testify against her.  Her daughter filed an affidavit in which she admitted that
she had told her mother contradictory stories about her pregnancies.

Trial
counsel represented Appellant during the plea proceedings.  Appellant was
properly admonished in accordance with article 26.13 of the code of criminal
procedure.[7]  She acknowledged by
signature that she fully understood the written plea admonishments; that she
was aware of the consequences of her plea, that she was mentally competent;
that her plea was “knowingly, freely, and voluntarily entered”; that she was
“totally satisfied with the representation given to [her] by [her] attorney”;
that her attorney had provided “fully effective and competent representation”;
and that she had “read the indictment or information filed in this case and
[she] committed each and every act alleged therein, except those acts waived by
the State.”

By
his signature, trial counsel acknowledged that he had “fully reviewed and
explained the above and foregoing court admonishments, rights, and waivers, as
well as the following judicial confession” to Appellant.

Appellant
had told trial counsel that her daughter never told her of the assaults, then
she admitted that her daughter had told her of the assaults but that she did
not believe her daughter, and then Appellant admitted that she had taken her
daughter to her abortion appointments.  Appellant also admitted to trial
counsel that she knew her husband was the father of one of the aborted
children.  Trial counsel told Appellant that the knowledge weakened her case,
and he discussed the elements of the case and the law of parties with
Appellant.

Would
the jury consider as evidence that Appellant was guilty as a party the facts
that Appellant (1) left her daughter alone with the husband and took her
daughter for abortions after her daughter had told her that the husband, (2)
was “messing with [her],” and (3) knew that her husband was the father of one
of the aborted fetuses?  Would the jury consider the evidence insufficient in
light of the fact that the daughter had told her mother different stories,
Appellant was at work when the daughter was alone with the husband, and
Appellant exhibited classic signs of spousal abuse?  According to trial
counsel, Appellant was not willing to take the risk, although trial counsel was
preparing for trial, despite the fact that he had been paid a mere $600. 
Appellant called a halt to his efforts to prepare her case for trial because
trial counsel could not guarantee the results.

The
trial court found that Appellant failed to sustain her burden, and the record
supports the trial court’s determinations of fact and conclusions of law.  The
trial court also found that trial counsel properly investigated the facts of
the case and properly advised Appellant under the law.  He properly advised
Appellant of the elements of the offense of sexual assault of a child and of
the law of parties.  Appellant failed to prove that trial counsel failed (1) to
advise her of a viable defense, (2) properly to familiarize himself with the
applicable law, or (3) properly to investigate the case.

When
a defendant complains that her plea was involuntary because of ineffective
assistance of counsel,

the voluntariness of
the plea depends on (1) whether counsel’s advice was within the range of
competence demanded of attorneys in criminal cases and if not, (2) whether
there is a reasonable probability that, but for counsel’s errors, [she] would
not have pleaded guilty and would have insisted on going to trial.[8]

A
party fails to sustain her burden to prove ineffective assistance of counsel
when she fails to establish the probability of a different result absent the
alleged deficient conduct sufficient to undermine confidence in the outcome.[9]

The
trial court held that Appellant had failed to sustain her burden to show either
that her plea was involuntary or that trial counsel rendered ineffective
assistance of counsel.  Because the record supports the trial court’s
determinations, we hold that the trial court did not clearly abuse its
discretion.  We therefore affirm the trial court’s denial of habeas corpus
relief.

 

PER
CURIAM

PANEL: 
DAUPHINOT,
J.; LIVINGSTON, C.J.; and GARDNER, J.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  June 30, 2011









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Code Crim.
Proc. Ann. art. 11.072 (West 2005).





[3]See id.





[4]Id. art. 11.01; Ex
parte Bennett, 245 S.W.3d 616, 618 (Tex. App.—Fort Worth 2008, pet. ref’d).





[5]Ex parte Karlson,
282 S.W.3d 118, 127 (Tex. App.—Fort Worth 2009, pet. ref’d); Ex parte Bruce,
112 S.W.3d 635, 639 (Tex. App.—Fort Worth 2003, pet. dism’d).





[6]Ex parte Amezquita,
223 S.W.3d 363, 367 (Tex. Crim. App. 2006); Karlson, 282 S.W.3d at 127.





[7]See Tex. Code Crim.
Proc. Ann. art. 26.13 (West Supp. 2010).





[8]Ex parte Moody, 991
S.W.2d 856, 857–58 (Tex. Crim. App. 1999) (citations omitted).





[9]Washington v. State,
771 S.W.2d 537, 545 (Tex. Crim. App.), cert. denied, 492 U.S. 912
(1989).