02-11-069-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-11-00069-CR

 

 


 
 
 Ex Parte Tracy Wayne Tow
 
 
  
 
 


 

 

----------

 

FROM THE 371st
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

          Appellant
Tracy Wayne Tow appeals the trial court’s denial of his application for a writ
of habeas corpus.  In two related issues, he challenges the trial court’s
finding that he did not set forth new facts that unquestionably establish his
innocence for causing bodily injury to a child.[2]  Upon determining that
the trial court did not abuse its discretion by denying habeas relief, we
affirm.

 

Background
Facts

          C.S.
was nine years old when she first told her mother, Jody, that appellant had
touched her “in [her] private places.”  Jody told the police, and C.S. gave a
videotaped interview.[3]  A grand jury indicted
appellant with four sex-related crimes.  Appellant entered a plea bargain in
which he pled guilty to causing bodily injury to a child, which was handwritten
as a fifth count on his indictment.[4]  As part of his plea,
appellant judicially confessed to committing each act in the indictment.  The
trial court placed appellant on a five-year term of deferred adjudication
community supervision in February 2007.

          As
part of his community supervision, the trial court imposed sex offender
conditions.[5]  For example, the trial
court required appellant to complete a sex offender treatment course.  Additionally,
the court ordered appellant to complete polygraph examinations without showing
signs of deception.  During his community supervision, appellant admitted to
having sexually abused C.S. to his psychotherapist and his community
supervision officer.

          In
the latter part of 2010, however, C.S. recanted her story about the abuse. 
Appellant then began denying that he had fondled C.S.  In October 2010, under
article 11.072 of the code of criminal procedure, he filed an application for a
writ of habeas corpus based on C.S.’s recantation, and he also filed a motion
to withdraw his guilty plea.[6]  Appellant’s application
included a document dated September 22, 2010 and signed by C.S. that stated,

          My name is [C.S.] and I am writing this to tell
you that the statement I said 5 years ago is not true.  My Aunt Lori . . . told
me that if I wanted to live with her and [Jody] that I had to say that
[appellant] had touched me in [inappropriate] places. . . .  I am writing you
this so I can get my family [together again].  I am very sorry for what I have
caused to everyone.  I just want to bring my family back [together].

          In
December 2010, the State filed a petition that asked the trial court to revoke
appellant’s community supervision and adjudicate him guilty.  The State alleged
that appellant had violated his community supervision by, among other
allegations, being discharged from sex offender treatment the month before,
failing to assume responsibility for his offense,[7]
and viewing sexually explicit material.[8]  The State also filed a
response to appellant’s application, stating in part, “In order for the Court
to resolve whether the new facts unquestionably establish the applicant’s
innocence, the Court must determine whether [C.S.’s] recantation is credible.”

          During
a February 2011 hearing,[9] when asked about why she
had originally alleged that appellant had molested her, C.S. testified,

My Aunt Lori, she had told me that if I wanted to live
with [Jody] -- because [Jody] was out of town, and she came back.  And [Lori]
said, if I wanted to live with [Jody], I say that Tracy touched me and in my
private places.  She said to say that because my Aunt [Thomesia] wouldn’t let
me come live with my mom.

          . . . .

          . . .  [Lori] had told me what to say.[[10]]

C.S.
explained that Jody was living with Lori (Jody’s sister) at the time, while C.S.
was living with appellant and Thomesia.  After C.S. made the allegations
against appellant, she lived with Jody and Lori.

          Lori
admitted that she had developed a plan for C.S. to live with her and Jody
instead of appellant and Thomesia, but Lori denied that she told C.S. to accuse
appellant of fondling her.  She said that while she did not tell C.S. to make
sexual allegations, she did not believe that appellant had fondled C.S.  Mayra
Pinedo, appellant’s community supervision officer, testified that before
November 11, 2010, appellant had told her that on twelve occasions over a ten
to eleven month period, he fondled C.S.[11]

          The
trial court found Lori’s testimony credible and did not believe that C.S.’s
recantation was genuine.  Thus, the trial court denied appellant’s application
for a writ of habeas corpus as well as his motion to withdraw his plea of
guilty.  Appellant brought this appeal.

The
Trial Court’s Decision to Deny Habeas Corpus Relief

          In
two related issues, appellant asserts that the trial court incorrectly denied
his application for a writ of habeas corpus.

Standard
of review and applicable law[12]

          Absent
an abuse of discretion, we must affirm a court’s decision on whether to grant
the relief requested in a habeas corpus application.  Kniatt v. State,
206 S.W.3d 657, 664 (Tex. Crim. App.), cert. denied, 549 U.S. 1052
(2006); Ex parte Karlson, 282 S.W.3d 118, 127 (Tex. App.—Fort Worth
2009, pet. ref’d).  We review the evidence in the light most favorable to the trial
court’s ruling.  Kniatt, 206 S.W.3d at 664.  In conducting our review,
we afford great deference to the trial court’s findings of fact and conclusions
of law that are supported by the record.  Karlson, 282 S.W.3d at 127–28.
 We also afford great deference to the trial court’s application of the law to
the facts to the extent that the resolution of the ultimate question turns on
an evaluation of credibility and demeanor.  Ex parte Peterson, 117
S.W.3d 804, 819 (Tex. Crim. App. 2003), overruled in part on other grounds
by Ex parte Lewis, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007).

           After
being placed on community supervision, a defendant may file a habeas corpus
application to challenge the order in which community supervision was imposed. 
Tex. Code Crim. Proc. Ann. art. 11.072, § 2(b)(1).  “[C]laims of actual
innocence based upon newly discovered evidence are cognizable on
post-conviction writs of habeas corpus.”  Ex parte Brown, 205 S.W.3d
538, 544 (Tex. Crim. App. 2006).  Appellant has raised a Herrera[13]
claim by asserting innocence based on the newly discovered evidence of C.S.’s
recantation.  See Brown, 205 S.W.3d at 544; Ex parte Mello III,
No. 02-10-00200-CR, 2011 WL 2611243, at *1 (Tex. App.—Fort Worth June 30, 2011,
no pet. h.).   Our decision in Mello III recites the law with regard to Herrera
claims:

          In reviewing a Herrera claim, the habeas
court must first consider whether the applicant presented newly discovered
evidence that affirmatively establishes his innocence.  If the applicant
presents such evidence, the habeas court then determines whether the applicant
proved by clear and convincing evidence that no reasonable juror would have
convicted him in light of the newly discovered evidence.  The habeas court must
examine the “newly discovered evidence” and determine whether the “new”
evidence, when balanced against the “old” inculpatory evidence, unquestionably
establishes the applicant’s innocence.  The habeas court does not review
the fact finder’s verdict but instead decides whether the newly discovered
evidence would have convinced the fact finder of the applicant’s innocence.  If
the applicant entered a guilty plea, the guilty plea—along with any evidence
entered, or stipulation to the evidence, supporting the plea—must be considered
in weighing the old evidence against the new evidence.

2011
WL 2611243, at *1 (emphasis added) (citations and footnotes omitted). Appellant
recognizes that the trial court, as the trier of fact, may choose to accept or
reject all or any part of a witness’s testimony.  Peterson, 117 S.W.3d
at 819 n.68; Ex parte Gibson, 149 Tex. Crim. 543, 544–45, 197 S.W.2d
109, 110 (1946).

Analysis

          The
trial court was compelled to resolve competing evidence:  C.S.’s recantation
hinged on her allegation that Lori had told her to falsely accuse appellant of
molesting her, while Lori denied doing so.  The trial court expressly found
that Lori’s testimony in that regard was credible while C.S.’s recantation was
not, and that court was in a better position to determine credibility than we
are because it viewed the witnesses and their demeanor when they testified.[14] 
See Karenev v. State, 281 S.W.3d 428, 438 n.11 (Tex. Crim. App.
2009) (“When it comes to factual findings, the trial court, not the appellate
court, is in a better position to make the determination.”); Ex parte
Thompson, 153 S.W.3d 416, 417–18 (Tex. Crim. App. 2005); see also
Skinner v. State, 293 S.W.3d 196, 204 (Tex. Crim. App. 2009) (“We review
deferentially the state district court’s determination of the credibility of a recantation.”);
Driggers v. State, 940 S.W.2d 699, 709 (Tex. App.—Texarkana 1996, pet.
ref’d) (“We do not determine the victim’s credibility.  What we have to
determine is whether the trial court abused its discretion in not accepting her
new testimony as true.  We therefore review the record to determine if there is
any evidence that reasonably supports the court’s decision.”).

          The
trial court could have determined that C.S.’s recantation was not credible
because it was motivated by her stated desire to bring her family back
together.  According to C.S.’s testimony, after recanting her allegations that
appellant had fondled her, C.S. has had more opportunities to visit with her sisters.

          Moreover,
the record casts some doubt on the validity of the motivation that Lori
allegedly had to persuade C.S. to lie (allowing C.S. to live with her and Jody
instead of appellant and Thomesia).  Lori explained that Thomesia did not
believe that Jody was responsible and therefore did not want to allow C.S. to live
with Jody.  In the past, Jody had left C.S. with appellant and Thomesia while Jody
spent long periods of time with men.  But according to Lori, there had never
been a court order removing C.S. from Jody’s care; thus, Thomesia may not have
had an enforceable right to keep C.S. if Jody had merely sought her return.[15]

          Next,
appellant pled guilty to the offense against C.S., and the trial court was
entitled to give “great respect” to that plea.  See Mello III, 2011 WL
2611243, at *1 (citing Ex parte Tuley, 109 S.W.3d 388, 391 (Tex. Crim.
App. 2002)).  Also, during appellant’s community supervision, he admitted his
offense against C.S. to multiple people.  First, he admitted to a polygraph
examiner that he “may have gotten carried away[,] . . . and that he may have
reached over and rubbed [C.S.’s] vagina.”  He later told the same examiner that
he “did touch [C.S.’s] vagina over her clothing.”  Second, he confessed his offense
to his psychotherapist.  Third, he made multiple admissions of fondling C.S. to
his community supervision officer and stopped making the admissions only after
he knew that he was facing potential revocation of his community supervision.[16]

          After
hearing these facts, the trial court found that appellant had not “set forth
new facts which unquestionably establish his innocence.”  On appeal, appellant
argues that he met his burden of showing by clear and convincing evidence that
no rational jury would have convicted him in light of the new evidence.  He
challenges the trial court’s decision on a theory that a rational jury would reconcile
C.S.’s and Lori’s testimony by finding that C.S. was willing to admit to lying
about the fondling but was not willing to accept responsibility for the
consequences of those lies.  Therefore, he argues that a jury would find that
C.S. cast the blame on Lori to avoid any repercussions that could result from
her recantation.[17]  Appellant’s theory is
interesting and possible, but it was not clearly and convincingly proven, and
it certainly does not unquestionably establish his innocence.  See
Mello III, 2011 WL 2611243, at *1.  As explained above, even if Lori had
not testified, under the circumstances in this case, including the facts that
appellant had pled guilty and admitted the offense to various people, the trial
judge was entitled to disbelieve C.S.’s later statement and accept her earlier
statement as true.  See Moreno v. State, 1 S.W.3d 846, 853 (Tex.
App.—Corpus Christi 1999, pet. ref’d).

          Based
on our review of the law and the record before us, we cannot say that the trial
court abused its discretion by denying appellant’s application for a writ of habeas
corpus.  See Mello III, 2011 WL 2611243, at *1, *10.  We therefore
overrule appellant’s issues.

Conclusion

          Having
overruled both issues, we affirm the trial court’s judgment denying appellant’s
application for a writ of habeas corpus.

 

 

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; WALKER and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 18, 2011









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code
Ann. § 22.04(a) (West 2011).  Under the circumstances of this case, appellant’s
crime was a third-degree felony.  See id. § 22.04(f).





[3]The trial court admitted a
recording of this interview as an exhibit during the hearing on appellant’s
application.





[4]Count five stated that
appellant, on or about April 1, 2005, intentionally or knowingly caused bodily
injury to C.S., a child younger than fifteen years of age, by striking her with
his hand.  The other four counts of appellant’s indictment alleged
second-degree felonies of indecency with a child.  See id. § 21.11(a)(1),
(d) (West 2011).  A conviction for indecency with a child would have required
appellant to register as a sex offender.  See Tex. Code Crim. Proc. Ann.
art. 62.001(5)(A) (West Supp. 2010).





[5]Imposition of the sex
offender conditions was part of the plea bargain agreement.





[6]See Tex. Code Crim.
Proc. Ann. art. 11.072 (West 2005) (concerning the procedures for litigating
applications for writs of habeas corpus in community supervision cases).





[7]A polygraph examiner
testified over appellant’s objection that appellant showed deception when he
denied rubbing C.S.’s vagina over her clothing.





[8]Appellant pled not true to
each of the State’s allegations in its petition to revoke his community
supervision.  The trial court, however, revoked the community supervision,
found appellant guilty, and sentenced him to eight years’ confinement.  The
propriety of the trial court’s decisions to revoke appellant’s community
supervision and to adjudicate him guilty is not at issue in this appeal.





[9]See id. art.
11.072, § 6(b).





[10]Specifically, according
to C.S., Lori told her to say that C.S. was popping appellant’s back when he
put her on a bed and started touching her.  C.S. was fifteen years old when the
trial court held its hearing on appellant’s application for a writ of habeas
corpus.





[11]Thus, appellant admitted
to inappropriately touching C.S. more times than the indictment alleged.





[12]Appellant argues for a
standard of review that differs from the one discussed below.  We will address
the substance of appellant’s issues under the correct standard.





[13]See Herrera v. Collins,
506 U.S. 390, 113 S. Ct. 853 (1993).





[14]Lori did not believe that
Tracy had ever fondled C.S.  As explained above, however, the trial court was
authorized to accept only part of Lori’s testimony.  Lori seemed to believe
that Jody (who, according to Lori, had falsely accused her father of
molestation) persuaded C.S. to falsely claim that appellant abused her.  But
Lori also said that when C.S. told Jody that appellant had abused her, Jody
“went ballistic” and started crying.





[15]As argued by appellant,
however, it appears that C.S.’s family “did not function in terms of court
orders.”





[16]When he testified at the
hearing on the State’s petition to revoke his community supervision, appellant
stated that he had lied for two years by detailing how he had fondled C.S.
because he did not want his community supervision to be revoked.





[17]In essence, therefore,
appellant suggests that C.S. recanted a false story by telling another false
story.