

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-09-128-CR

WADE MANNING PERRY                                                        APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Wade Manning Perry appeals his convictions for two counts of online solicitation of a minor. *See* Tex. Penal Code Ann. § 33.021(b)(2), (c), (f) (Vernon Supp. 2009). In four points, he argues that his trial counsel gave him ineffective assistance. We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

Background Facts

In June 2007, a Tarrant County grand jury indicted Perry with two counts of online solicitation of a minor.[2]  A year later, Perry entered into a written plea agreement with the State, waived several statutory and constitutional rights, signed a judicial confession, and pled guilty.  Under the plea agreement, the trial court deferred its adjudication of Perry's guilt, placed Perry on community supervision for six years, and delineated several written conditions of the community supervision.

In November 2008, the State petitioned the trial court to proceed to its adjudication of Perry's guilt, alleging in five numbered paragraphs that he had violated his community supervision terms because he (1) consumed alcohol twice, (2) went to Baby Dolls (a sexually oriented business) three times and at various times possessed or viewed pornography, (3) left Tarrant County without his probation officer's authorization, (4) failed to notify his probation officer when his address changed, and (5) did not comply with electronic monitoring because he left his home without approval and failed to dock his equipment. Upon Perry's request, the trial court appointed Robert Weathers to represent

---

[2] In some circumstances, online solicitation of a minor is a third-degree felony, but the indictment alleged second-degree felonies.  *See* Tex. Penal Code Ann. § 33.021(f).

him regarding the allegations in the State's petition. In January 2009, the State amended its petition to the extent that it changed the allegation in the third paragraph from leaving Tarrant County without authorization to traveling three times within a thousand feet of a place where children commonly gather—a "child safety zone"—including a school.

The trial court admonished Perry about his rights regarding the State's petition, and Perry waived those rights and pled true to all but the third paragraph of the State's amended petition (regarding traveling into a child safety zone), to which he pled not true. Perry called his psychotherapist to testify about Perry's weekly sex offender treatment,[3] and then Perry testified that he initially did not take community supervision seriously and explained some of the circumstances of his violations (for instance, he said that he went to Baby Doll's only to deliver pizzas). The evidence showed that Perry complied with many of his community supervision requirements, such as attending therapy and not committing further crimes, and that he was "punctual, courteous, and very respectful" to his community supervision officer. But Perry's community supervision officer said that Perry lied about his address

---

[3] ... Perry's psychotherapist testified during the State's cross-examination that Perry "seemed to engage in treatment the minute that [the State's petition to adjudicate] was filed."

change and made admissions about his mistakes only after flunking a polygraph examination.

The trial court found all five of the paragraphs in the State's amended petition true, convicted Perry, and postponed sentencing for the preparation of a presentence investigation report (PSI).  After hearing Perry testify again during the sentencing hearing, the trial court sentenced him to sixteen years' confinement.  He filed notice of this appeal.

## Ineffective Assistance of Counsel

In four points, Perry argues that his trial counsel was ineffective, thus violating his rights under the Texas and federal constitutions.

### Standard of review

The standard for ineffective assistance of counsel is the same under the Texas and federal constitutions.  *Hernandez v. State*, 726 S.W.2d 53, 56 (Tex. Crim. App. 1986); *Lemmons v. State*, 75 S.W.3d 513, 526 (Tex. App.—San Antonio 2002, pet. ref'd).  To establish ineffective assistance of counsel, Perry must show by a preponderance of the evidence that Weathers's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for Weathers's deficiency, the result of the proceeding would have been different.  *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734,

740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065.

Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63).

To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting

5

*Thompson*, 9 S.W.3d at 813).  It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair and reliable trial.  *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.  In other words, Perry must show there is a reasonable probability that, but for Weathers's unprofessional errors, the result of the proceeding would have been different. *See id.* at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.*  The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged.  *Id.* at 697, 104 S. Ct. at 2070.

Analysis

In his four respective points, Perry asserts that Weathers was ineffective because he (1) allegedly failed to review the State's correct (amended) petition before the adjudication proceeding, (2) failed to read Perry's written statement prior to the adjudication proceeding, (3) failed to obtain a "mitigation specialist" to assist in the case, and (4) failed to obtain an expert witness on electronic monitoring devices.  Perry first contends that his trial counsel did not discuss the State's correct (amended) petition with him prior to his adjudication hearing.

Perry relies on a portion of the record that indicates that when Weathers tried to cross-examine a community supervision officer about paragraph three of the amended petition, he became confused because he was looking at paragraph three of the original petition:

> Q. It says in particular that in violation of that condition, that the defendant left Tarrant County, Texas, on or about October 17th of 2008 without authorization from the court or the probation officer.
>
> That's the actual allegation; is that not true?
>
> . . . .
>
> A. Sir, that's not on my petition. I don't know where you're reading --
>
> Q. That was the original petition. You've amended that petition; is that correct?

However, while this excerpt shows that Weathers was referring to the wrong petition during part of his questioning, it does not, as Perry asserts, make "clear" that Weathers did not discuss the correct petition with Perry. Instead, Perry unequivocally represented to the trial court at the beginning of the adjudication proceeding that he had discussed the amended petition with Weathers. And Weathers was present when the trial court read the allegation of the third paragraph of the amended petition before Perry pled not true to the paragraph. Thus, at the very most, Weathers's confusion during questioning

7

creates ambiguity as to whether he knew of or had reviewed the State's amended petition, but we cannot infer ineffective assistance from unclear portions of the record. *See Mata*, 226 S.W.3d at 432; *Ex parte Karlson*, 282 S.W.3d 118, 128 (Tex. App.—Fort Worth 2009, pet. ref'd); *Edwards v. State*, 280 S.W.3d 441, 443 (Tex. App.—Fort Worth 2009, pet. ref'd).

Also, even if Weathers had never seen the third paragraph of the amended petition and was wholly unprepared to defend against it, Perry pled true to the other four paragraphs of the amended petition, which were the same as the corresponding paragraphs in the original petition. Perry's pleas of true were sufficient to support the trial court's decision to revoke his community supervision and adjudicate him guilty, and Perry has not shown how Weathers's greater preparation as to paragraph three would have changed that decision or reduced his punishment. *See Strickland,* 466 U.S. at 694, 104 S. Ct. at 2068; *Cole v. State*, 578 S.W.2d 127, 128 (Tex. Crim. App. [Panel Op.] 1979); *Battles v. State*, 626 S.W.2d 149, 150 (Tex. App.—Fort Worth 1981, no pet.).

Finally, Perry also briefly contends in his first point that Weathers's alleged lack of preparation signals that Perry's pleas were involuntary. However, Perry pled *not true* to the only paragraph of the State's petition that Weathers was allegedly unprepared to litigate, and Perry has not explained how Weathers's alleged lack of preparation as to paragraph three

8

affected the voluntariness of Perry's choice to enter true pleas to the *other* four paragraphs. Perry represented to the trial court that he was pleading true to those paragraphs freely and voluntarily. For all of these reasons, we overrule Perry's first point.

In his second point, Perry argues that his trial counsel was ineffective because he did not read Perry's written statement prior to the adjudication hearing. Because Perry pled not true to paragraph three of the State's amended petition, the State called a community supervision officer who testified that Perry told him verbally and through a written statement that he violated that paragraph on three occasions by going to his home—which was within a thousand feet of a school—to collect his belongings, watch pornographic movies with his wife, and have sex with her. When the State offered the statement as evidence, Weathers objected because he had not seen it, but Weathers later withdrew the objection.

As the State argues, Perry has not demonstrated that before the adjudication proceeding, Weathers had knowledge of the statement, access to it, or a right to view it. Assuming that Weathers did know of the statement and had a right to view it but chose not to, Perry has also not shown how Weathers could have affected the proceedings in any way by studying the statement; Perry has not argued that the statement was inadmissible or that Weathers

9

should have made any particular tactical decision concerning the statement. Finally, when Weathers was informed of the statement, the record indicates that he acted reasonably by objecting on the ground that he had not seen it and taking advantage of a recess that the trial court granted by reviewing it with Perry.

Thus, we hold that Perry has not sustained his burden of proving either *Strickland* element of ineffective assistance of counsel on Weathers's conduct regarding Perry's written statement. We overrule Perry's second point.

Perry argues in his third point that Weathers was ineffective because he did not obtain a mitigation expert in "an effort to persuade the trial court to assess a lenient sentence." He relies on *Wiggins v. Smith* to contend that Weathers should have relied on a mitigation expert rather than relying only on the PSI and Perry's testimony for mitigation. 539 U.S. 510, 523–27, 534–35, 123 S. Ct. 2527, 2536–38, 2542 (2003) (holding that counsel's decision not to adequately investigate or introduce evidence about the defendant's abusive childhood in a capital case was unreasonable). In *Wiggins*, while reviewing the defendant's proceedings for post-conviction relief in which he had presented the testimony of a licensed social worker about his bleak life history to support his ineffective assistance claim, the Supreme Court said that "strategic choices made after less than complete investigation are reasonable" only to the extent

that "reasonable professional judgments support the limitations on investigation." *Wiggins*, 539 U.S. at 521, 123 S. Ct. at 2535. Here, unlike in *Wiggins*, Perry raises his ineffective assistance claim on direct appeal, without having filed a motion for new trial to develop his position, and without any evidence concerning any particular basis for mitigation that Weathers should have raised but did not. The facts here are analogous to our recent decision in *Chavarri v. State*, in which we held,

> [T]here is no evidence in the record demonstrating why trial counsel did not hire a mitigation specialist, there is no evidence in the record illuminating the extent of trial counsel's investigation into Chavarri's background and life circumstances for possible mitigating evidence, nor is there any evidence in the record that mitigating evidence existed to be discovered by a mitigation specialist. The silent record is thus not sufficiently developed to allow us to do more than speculate as to why trial counsel did not hire a mitigation specialist. . . .
>
> Because Chavarri's allegation of ineffectiveness is not firmly founded in the record, he has not overcome the strong presumption that trial counsel's conduct fell within the wide range of reasonable representation.

Nos. 02-08-00099-CR, 02-08-00100-CR, 2009 WL 885954, at *2 (Tex. App.—Fort Worth Apr. 2, 2009, no pet.) (mem. op., not designated for publication) (footnote and citations omitted); *see Grijalva v. State*, No. 02-08-00018-CR, 2008 WL 4602252, at *1 (Tex. App.—Fort Worth Oct. 16, 2008, no pet.) (mem. op., not designated for publication) (holding similarly and

11

explaining that there was no "evidence in the record indicating that any such mitigation evidence existed to be discovered by a mitigation specialist had appellant obtained one"); *Teixeira v. State*, 89 S.W.3d 190, 194 (Tex. App.—Texarkana 2002, pet. ref'd) (holding that to sustain an ineffective assistance challenge, "there must be some showing in the record that [a mitigation] expert would have testified in a manner that would have benefitted" the defendant). Because the record is undeveloped and Perry has not proved or even contended that there is any particular mitigating evidence that was not introduced at trial but would have been had Weathers retained a mitigation expert, we hold under the cases cited above that Perry has not sustained his burden to show that Weathers was ineffective on that ground, and we overrule Perry's third point.

Finally, in Perry's fourth point, he argues that his trial counsel should have retained an expert witness to testify about electronic monitoring devices (and presumably, how insulin pumps may interfere with such devices, since Perry is diabetic and attempted to testify about such interference at trial). The entire argument for Perry's fourth point is as follows:

> Just as [Perry's] Trial Counsel should have obtained a Mitigation Expert, counsel also should have asked the trial court for an expert on Electronic Monitoring Devices. Instead, [Perry's] Trial Counsel sought to in effect, use [Perry] himself as the expert, relying on the "research" that [Perry] had "personally" done on the subject.

12

Rather than offering the testimony of an expert or even an authoritative article found by [Perry] during his 'research,' trial counsel sought to use [Perry's] own testimony; and when the State objected, counsel had [nowhere] else to turn.

However, Perry cannot demonstrate that an expert that testified about electronic monitoring devices could have helped his defense. First, Perry pled true to the amended petition's paragraph related to his monitoring device, and that plea was sufficient to enable to the trial court to find the allegation true. Second, the State's allegations in its amended petition regarding the monitoring device were that Perry left his home without authorization and failed to dock the device on separate days. Perry's testimony at trial indicated that he left his home to do laundry after wetting his bed because he had a high blood sugar level after his insulin pump became unhooked during the middle of the night while he was "moving around." The testimony did not indicate that the pump's malfunctioning had anything to do with his monitoring device. Perry also testified that he failed to dock the monitoring device because he had just moved into a new apartment, not because of anything related to his insulin pump.

Thus, Perry admitted the facts alleged by the State and cannot show that retaining an expert on monitoring devices was reasonably required by Weathers or would have changed the result of his case. *See Strickland*, 466 U.S. at 687,

13

104 S. Ct. at 2064; *Salinas*, 163 S.W.3d at 740. Therefore, we also overrule Perry's fourth point.

## Conclusion

Having overruled all of Perry's points, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE

PANEL:  LIVINGSTON, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  December 3, 2009

14