COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO. 2-09-128-CR

 

 

WADE MANNING PERRY                                                       APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Appellant Wade Manning Perry appeals his
convictions for two counts of  online
solicitation of a minor.  See Tex.
Penal Code Ann. ' 33.021(b)(2),
(c), (f) (Vernon Supp. 2009).  In four
points, he argues that his trial counsel gave him ineffective assistance.  We affirm.








Background
Facts

In June 2007, a Tarrant County grand jury
indicted Perry with two counts of online solicitation of a minor.[2]  A year later, Perry entered into a written
plea agreement with the State, waived several statutory and constitutional
rights, signed a judicial confession, and pled guilty.  Under the plea agreement, the trial court
deferred its adjudication of Perry=s guilt, placed Perry on community supervision
for six years, and delineated several written conditions of the community
supervision.








In November 2008, the State petitioned the trial
court to proceed to its adjudication of Perry=s guilt, alleging in five numbered paragraphs
that he had violated his community supervision terms because he (1) consumed
alcohol twice, (2) went to Baby Dolls (a sexually oriented business) three
times and at various times possessed or viewed pornography, (3) left Tarrant
County without his probation officer=s authorization, (4) failed to notify his
probation officer when his address changed, and (5) did not comply with
electronic monitoring because he left his home without approval and failed to
dock his equipment.  Upon Perry=s request, the trial court appointed Robert
Weathers to represent him regarding the allegations in the State=s petition. 
In January 2009, the State amended its petition to the extent that it
changed the allegation in the third paragraph from leaving Tarrant County
without authorization to traveling three times within a thousand feet of a
place where children commonly gatherCa Achild safety zone@Cincluding a school.








The trial court admonished Perry about his rights
regarding the State=s
petition, and Perry waived those rights and pled true to all but the third
paragraph of the State=s
amended petition (regarding traveling into a child safety zone), to which he
pled not true.  Perry called his
psychotherapist to testify about Perry=s weekly sex offender treatment,[3]
and then Perry testified that he initially did not take community supervision
seriously and explained some of the circumstances of his violations (for
instance, he said that he went to Baby Doll=s only to deliver pizzas).  The evidence showed that Perry complied with
many of his community supervision requirements, such as attending therapy and
not committing further crimes, and that he was Apunctual, courteous, and very respectful@ to his community supervision officer.  But Perry=s community supervision officer said that Perry
lied about his address change and made admissions about his mistakes only after
flunking a polygraph examination.

The trial court found all five of the paragraphs
in the State=s
amended petition true, convicted Perry, and postponed sentencing for the
preparation of a presentence investigation report (PSI).  After hearing Perry testify again during the
sentencing hearing, the trial court sentenced him to sixteen years= confinement. 
He filed notice of this appeal.

Ineffective
Assistance of Counsel

In four points, Perry argues that his trial
counsel was ineffective, thus violating his rights under the Texas and federal
constitutions.

Standard
of review








The standard for ineffective assistance of
counsel is the same under the Texas and federal constitutions.  Hernandez v. State, 726 S.W.2d 53, 56
(Tex. Crim. App. 1986); Lemmons v. State, 75 S.W.3d 513, 526 (Tex. App.CSan Antonio 2002, pet. ref=d).  To
establish ineffective assistance of counsel, Perry must show by a preponderance
of the evidence that Weathers=s representation fell below the standard of
prevailing professional norms and that there is a reasonable probability that,
but for Weathers=s
deficiency, the result of the proceeding would have been different.  See Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62B63 (Tex. Crim. App. 2001); Thompson v.
State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under
the first prong, we look to the totality of the representation and the
particular circumstances of each case.  Thompson,
9 S.W.3d at 813.  The issue is whether
counsel=s assistance was reasonable under all the
circumstances and prevailing professional norms at the time of the alleged
error.  See Strickland, 466 U.S.
at 688B89, 104 S. Ct. at 2065.

Review of counsel=s representation is highly deferential, and the
reviewing court indulges a strong presumption that counsel=s conduct fell within a wide range of reasonable
representation.  Salinas, 163
S.W.3d at 740; Mallett, 65 S.W.3d at 63. 
A reviewing court will rarely be in a position on direct appeal to
fairly evaluate the merits of an ineffective assistance claim.  Thompson, 9 S.W.3d at 813B14.  AIn the majority of cases, the record on direct
appeal is undeveloped and cannot adequately reflect the motives behind trial
counsel=s actions.@  Salinas,
163 S.W.3d at 740 (quoting Mallett, 65 S.W.3d at 63).








To overcome the presumption of reasonable
professional assistance, Aany
allegation of ineffectiveness must be firmly founded in the record, and the record
must affirmatively demonstrate the alleged ineffectiveness.@  Id.
(quoting Thompson, 9 S.W.3d at 813). 
It is not appropriate for an appellate court to simply infer ineffective
assistance based upon unclear portions of the record. Mata v. State, 226
S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of Strickland requires a
showing that counsel=s
errors were so serious that they deprived the defendant of a fair and reliable
trial.  Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.  In other words, Perry must show there is a
reasonable probability that, but for Weathers=s unprofessional errors, the result of the
proceeding would have been different.  See
id. at 694, 104 S. Ct. at 2068.  A
reasonable probability is a probability sufficient to undermine confidence in
the outcome.  Id.  The ultimate focus of our inquiry must be on
the fundamental fairness of the proceeding in which the result is being
challenged.  Id. at 697, 104 S.
Ct. at 2070.

Analysis








In his four respective points, Perry asserts that
Weathers was ineffective because he (1) allegedly failed to review the
State=s correct (amended) petition before the
adjudication proceeding, (2) failed to read Perry=s written statement prior to the adjudication
proceeding, (3) failed to obtain a Amitigation specialist@ to assist in the case, and (4) failed to obtain
an expert witness on electronic monitoring devices.  Perry first contends that his trial counsel
did not discuss the State=s
correct (amended) petition with him prior to his adjudication hearing.  Perry relies on a portion of the record that
indicates that when Weathers tried to cross-examine a community supervision
officer about paragraph three of the amended petition, he became confused
because he was looking at paragraph three of the original petition:

Q.     It says in particular that in violation of
that condition, that the defendant left Tarrant County, Texas, on or about
October 17th of 2008 without authorization from the court or the probation
officer.

 

That=s the actual allegation; is that not true?

 

. . . .

 

A.     Sir, that=s not on my petition.  I don=t know where you=re reading --

 

Q.     That was the original petition.  You=ve amended
that petition; is that correct?

 








However, while this excerpt shows that Weathers
was referring to the wrong petition during part of his questioning, it does
not, as Perry asserts, make Aclear@ that Weathers did not discuss the correct
petition with Perry.  Instead, Perry
unequivocally represented to the trial court at the beginning of the
adjudication proceeding that he had discussed the amended petition with
Weathers.  And Weathers was present when
the trial court read the allegation of the third paragraph of the amended
petition before Perry pled not true to the paragraph.  Thus, at the very most, Weathers=s confusion during questioning creates ambiguity
as to whether he knew of or had reviewed the State=s amended petition, but we cannot infer
ineffective assistance from unclear portions of the record.  See Mata, 226 S.W.3d at 432; Ex
parte Karlson, 282 S.W.3d 118, 128 (Tex. App.CFort Worth 2009, pet. ref=d); Edwards v. State, 280 S.W.3d 441, 443
(Tex. App.CFort
Worth 2009, pet. ref=d).

Also, even if Weathers had never seen the third
paragraph of the amended petition and was wholly unprepared to defend against
it, Perry pled true to the other four paragraphs of the amended petition, which
were the same as the corresponding paragraphs in the original petition.  Perry=s pleas of true were sufficient to support the
trial court=s
decision to revoke his community supervision and adjudicate him guilty, and
Perry has not shown how Weathers=s greater preparation as to paragraph three would
have changed that decision or reduced his punishment.  See Strickland, 466 U.S. at 694, 104
S. Ct. at 2068; Cole v. State, 578 S.W.2d 127, 128 (Tex. Crim. App.
[Panel Op.] 1979); Battles v. State, 626 S.W.2d 149, 150 (Tex. App.CFort Worth 1981, no pet.).








Finally, Perry also briefly contends in his first
point that Weathers=s
alleged lack of preparation signals that Perry=s pleas were involuntary.  However,
Perry pled not true to the only paragraph of the State=s petition that Weathers was allegedly unprepared
to litigate, and Perry has not explained how Weathers=s alleged lack of preparation as to paragraph
three affected the voluntariness of Perry=s choice to enter true pleas to the other
four paragraphs.  Perry represented
to the trial court that he was pleading true to those paragraphs freely and
voluntarily.  For all of these reasons,
we overrule Perry=s
first point.

In his second point, Perry argues that his trial
counsel was ineffective because he did not read Perry=s written statement prior to the adjudication
hearing.  Because Perry pled not true to
paragraph three of the State=s amended petition, the State called a community
supervision officer who testified that Perry told him verbally and through a
written statement that he violated that paragraph on three occasions by going
to his homeCwhich
was within a thousand feet of a schoolCto collect his belongings, watch pornographic
movies with his wife, and have sex with her. 
When the State offered the statement as evidence, Weathers objected
because he had not seen it, but Weathers later withdrew the objection.








As the State argues, Perry has not demonstrated
that before the adjudication proceeding, Weathers had knowledge of the
statement, access to it, or a right to view it. 
Assuming that Weathers did know of the statement and had a right to view
it but chose not to, Perry has also not shown how Weathers could have affected
the proceedings in any way by studying the statement; Perry has not argued that
the statement was inadmissible or that Weathers should have made any particular
tactical decision concerning the statement. 
Finally, when Weathers was informed of the statement, the record
indicates that he acted reasonably by objecting on the ground that he had not
seen it and taking advantage of a recess that the trial court granted by
reviewing it with Perry.

Thus, we hold that Perry has not sustained his
burden of proving either Strickland element of ineffective assistance of
counsel on Weathers=s
conduct regarding Perry=s
written statement.  We overrule Perry=s second point.








Perry argues in his third point that Weathers was
ineffective because he did not obtain a mitigation expert in Aan effort to persuade the trial court to assess a
lenient sentence.@  He relies on Wiggins v. Smith to
contend that Weathers should have relied on a mitigation expert rather than
relying only on the PSI and Perry=s testimony for mitigation.  539 U.S. 510, 523B27, 534B35, 123 S. Ct. 2527, 2536B38, 2542 (2003) (holding that counsel=s decision not to adequately investigate or
introduce evidence about the defendant=s abusive childhood in a capital case was
unreasonable).  In Wiggins, while
reviewing the defendant=s
proceedings for post-conviction relief in which he had presented the testimony
of a licensed social worker about his bleak life history to support his
ineffective assistance claim, the Supreme Court said that Astrategic choices made after less than complete
investigation are reasonable@ only to the extent that Areasonable professional judgments support the
limitations on investigation.@  Wiggins,
539 U.S. at 521, 123 S. Ct. at 2535. 
Here, unlike in Wiggins, Perry raises his ineffective assistance
claim on direct appeal, without having filed a motion for new trial to develop
his position, and without any evidence concerning any particular basis for
mitigation that Weathers should have raised but did not.  The facts here are analogous to our recent
decision in Chavarri v. State, in which we held,

[T]here is no evidence in the record
demonstrating why trial counsel did not hire a mitigation specialist, there is
no evidence in the record illuminating the extent of trial counsel=s investigation into Chavarri=s background
and life circumstances for possible mitigating evidence, nor is there any
evidence in the record that mitigating evidence existed to be discovered by a
mitigation specialist.  The silent record
is thus not sufficiently developed to allow us to do more than speculate as to
why trial counsel did not hire a mitigation specialist. . . .

 

Because
Chavarri=s allegation of ineffectiveness is not firmly founded in the record,
he has not overcome the strong presumption that trial counsel=s conduct fell within the wide range of reasonable representation.

 








Nos.
02‑08‑00099‑CR, 02‑08‑00100‑CR, 2009 WL
885954, at *2 (Tex. App.CFort
Worth Apr. 2, 2009, no pet.) (mem. op., not designated for publication)
(footnote and citations omitted); see Grijalva v. State, No. 02‑08‑00018‑CR,
2008 WL 4602252, at *1 (Tex. App.CFort Worth Oct. 16, 2008, no pet.) (mem. op., not
designated for publication) (holding similarly and explaining that there was no
Aevidence in the record indicating that any such
mitigation evidence existed to be discovered by a mitigation specialist had
appellant obtained one@);
Teixeira v. State, 89 S.W.3d 190, 194 (Tex. App.CTexarkana 2002, pet. ref=d) (holding that to sustain an ineffective
assistance challenge, Athere
must be some showing in the record that [a mitigation] expert would have
testified in a manner that would have benefitted@ the defendant). 
Because the record is undeveloped and Perry has not proved or even
contended that there is any particular mitigating evidence that was not
introduced at trial but would have been had Weathers retained a mitigation
expert, we hold under the cases cited above that Perry has not sustained his
burden to show that Weathers was ineffective on that ground, and we overrule
Perry=s third point.

Finally, in Perry=s fourth point, he argues that his trial counsel
should have retained an expert witness to testify about electronic monitoring
devices (and presumably, how insulin pumps may interfere with such devices,
since Perry is diabetic and attempted to testify about such interference at
trial).  The entire argument for Perry=s fourth point is as follows:








Just as [Perry=s] Trial
Counsel should have obtained a Mitigation Expert, counsel also should have
asked the trial court for an expert on Electronic Monitoring Devices.  Instead, [Perry=s] Trial Counsel sought to in effect, use [Perry] himself as the
expert, relying on the Aresearch@ that [Perry] had Apersonally@ done on the subject.  Rather
than offering the testimony of an expert or even an authoritative article found
by [Perry] during his >research,= trial counsel sought to use [Perry=s] own
testimony; and when the State objected, counsel had [nowhere] else to turn.

 

However, Perry cannot demonstrate that an expert
that testified about electronic monitoring devices could have helped his
defense.  First, Perry pled true to the
amended petition=s
paragraph related to his monitoring device, and that plea was sufficient to
enable to the trial court to find the allegation true.  Second, the State=s allegations in its amended petition regarding
the monitoring device were that Perry left his home without authorization and
failed to dock the device on separate days. 
Perry=s
testimony at trial indicated that he left his home to do laundry after wetting
his bed because he had a high blood sugar level after his insulin pump became
unhooked during the middle of the night while he was Amoving around.@  The
testimony did not indicate that the pump=s malfunctioning had anything to do with his
monitoring device.  Perry also testified
that he failed to dock the monitoring device because he had just moved into a
new apartment, not because of anything related to his insulin pump.








Thus, Perry admitted the facts alleged by the
State and cannot show that retaining an expert on monitoring devices was
reasonably required by Weathers or would have changed the result of his
case.  See Strickland, 466
U.S. at 687, 104 S. Ct. at 2064; Salinas, 163 S.W.3d at 740.  Therefore, we also overrule Perry=s fourth point.

Conclusion

Having overruled all of Perry=s points, we affirm the trial court=s judgment.

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL: 
LIVINGSTON, WALKER, and MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: 
December 3, 2009











[1]See Tex. R. App. P. 47.4.





[2]In some circumstances, online solicitation of a minor is a
third-degree felony, but the indictment alleged second-degree felonies.  See Tex. Penal Code Ann. ' 33.021(f).





[3]Perry=s psychotherapist testified during the State=s cross-examination that Perry Aseemed to
engage in treatment the minute that [the State=s petition to adjudicate] was filed.@