

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00561-CR

Ex parte Lawrence Idigbe

§ From County Criminal Court No. 1

§ of Denton County (CR-2010-01477-A)

§ February 28, 2013

§ Per Curiam

§ (nfp)

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS


PER CURIAM



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00561-CR

EX PARTE LAWRENCE IDIGBE

------------

FROM COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

Appellant Lawrence Idigbe appeals the denial of his article 11.072 application for writ of habeas corpus. Because the habeas court did not clearly abuse its discretion, we affirm its denial of habeas corpus relief.

---

[1]*See* Tex. R. App. P. 47.4.

## II.  Factual and Procedural Background

On November 5, 2010, Idigbe pleaded guilty to the misdemeanor assault of his girlfriend Ebonie Akinwunmi in exchange for twelve months' deferred adjudication community supervision and a fine.

Idigbe was successfully discharged from community supervision on November 28, 2011, and he filed an application for writ of habeas corpus on October 26, 2012, presenting two grounds for relief:  his actual innocence with regard to the charged offense and an involuntary plea based on his trial counsel's coercion.  He attached Akinwunmi's affidavit to his application.

In her affidavit, Akinwunmi set out the following recitation with regard to the incident giving rise to the assault charge:

> On January 15, 2010, I went out with some of my girlfriends.  I left my child, [K.I.], with a friend in my complex that evening.  Early the next morning of January 16, 2010, my friend and I picked up my daughter and went back to my apartment.  My boyfriend, and father of [K.I.], Lawrence Idigbe was already outside my apartment waiting for me to get home from that evening out.  This was common for him to check on me and my child after evenings where I would go out drinking.  I had obviously been out drinking during the night.  He complained of me being wasted and didn[']t want our daughter to see me in this state.  He said that he was taking [K.I.] for the night and he picked her up to take her.  I rushed to try to stop Lawrence and I grabbed at [K.I.] as Lawrence was lifting her.  Due to both of us grabbing at our daughter, Lawrence's hand accidentally hit me in the mouth.  He immediately apologized but I asked him to leave.  My friend that was with me, who was in the back room at the time, thought that we were fighting.  I shouted at her to call the police so she called the police.  Lawrence left immediately.
>
> When the police arrived, I told them that I had been drinking heavily and did not want to fill out any paperwork.  I allowed them to take photos of me and my daughter but I would not sign or write

3

anything. The next day I realized the full extent of what had happened and so I never followed up with the police and pressing charges. Neither of us even realized that charges had been formally pressed after that point. A few months later, Lawrence was stopped on a traffic violation and the officer notified him of a pending warrant on an assault. In March 2010, shortly after formal charges were filed against Lawrence, I contacted Denton [C]ounty to inform them that I wanted the charges dropped. I also filed a formal affidavit of non-prosecution with the Denton DA's office shortly thereafter. I have consistently stated that Lawrence did not assault me and that I do not want him prosecuted for something he allegedly did to me, since it is not true. I was ready and able to testify at trial and state that he never assaulted me and that the whole situation had been blown out of proportion. The defense attorney had been resetting the trial several times but I always remained available to testify on behalf of Lawrence.

Lawrence and I do not have a violent relationship in any way. We have been in a relationship for seven years and have never been physically violent towards each other. We have our disagreements, as all couples do, but he has never been physically aggressive towards me ever. He is a gentleman and has never hurt or hit me or my daughter.

I am not making this affidavit to frustrate the ends of justice, nor have I been offered any benefit to testify falsely, to withhold testimony, to elude legal process or to be absent from any official proceeding.

In his verified application, Idigbe stated the following with regard to the

voluntariness of his plea:

After faithfully appearing in court on numerous occasions, Mr. Idigbe came again to court on November 5, 2010. His attorney, Brian Bolton, had sent a different lawyer to appear that day with Mr. Idigbe. Mr. Idigbe did not see his attorney in court so he stepped out of the courtroom to call his attorney. When he re-entered the courtroom, the Judge said that Mr. Idigbe had been late to court and instructed the bailiff to arrest Mr. Idigbe. While the bailiffs were in the process of arresting him, the attorney sent by Mr. Bolton to appear with Mr. Idigbe approached him and told him that he should take a plea to deferred adjudication in order to avoid being arrested

4

that day. Mr. Idigbe was told by this lawyer, who he had never met before, that taking the deferred adjudication was the only way for him to avoid going to jail. Based upon this series of coercive acts, Mr. Idigbe accepted the deferred adjudication and entered a guilty plea.

If Mr. Idigbe had not been subjected to this coercion, he would not have entered a guilty plea to this case. It was his intention to persist in his plea of not guilty and proceed to a jury trial because Mr. Idigbe is, in fact, not guilty of this charge.

Other than his verified application and Akinwunmi's affidavit, Idigbe offered no other evidence to support his claims.

In response, the State contended that Idigbe's actual innocence claim should fail because Idigbe had not established his innocence or shown that the evidence upon which he relied was newly discovered. Specifically, the State pointed out that Akinwunmi's claim that she had not been assaulted by Idigbe was not newly discovered or newly available evidence because Idigbe and the State both knew this before Idigbe entered his plea bargain and that Akinwunmi's affidavit did not demonstrate clear and convincing evidence of Idigbe's innocence.

To support its response to Idigbe's actual innocence argument, the State pointed out that Akinwunmi had stated in her affidavit that she had filed an affidavit of nonprosecution in March 2010. The State attached the police summary of the assault containing Akinwunmi's oral statements to the police.[2]

_____

[2]The police report lists as evidence taken in the case digital photos of Akinwunmi's injuries and of the child who was at the scene during the assault as well as a copy of the 911 phone call, but the record does not reflect that the trial

5

The police report summary attached by the State to its response reflects that on January 16, 2010, at approximately 2:32 a.m., Akinwunmi reported to police that Idigbe, her ex-husband, "struck her in the mouth with a closed right fist causing her bottom lip to split, bleed and swell" after he became upset that she had been out at a club and she asked him to leave. According to the report, Akinwunmi's friend called 911, and while the friend was on the phone with 911, she saw Idgibe punch Akinwunmi in the mouth without warning during their argument; she reported this to the 911 operator. The officers took photos of Akinwunmi's injuries.

The report reflects that four days after the incident, an officer called Akinwunmi and left her a voicemail asking her to return his call. When she returned his call two days later, they set up a time for an interview, but Akinwunmi did not show up for the interview and returned no subsequent phone calls. Although an officer contacted Idigbe on January 21, 2010, and asked him to come in for an interview, Idigbe did not set up an interview, although he called the officer twice to ask for additional details about why the officer was investigating, claiming that what had occurred was just a misunderstanding. Idigbe also told the officer that Akinwunmi did not want to talk to anybody about the incident.

court reviewed these before denying Idigbe's application, and they are not included in the record on appeal.

6

The State also responded that Idigbe's involuntary-plea claim should fail because he had delayed in making it until after he had satisfied the conditions of his community supervision and had been successfully discharged. The State pointed out that the trial court had properly admonished Idigbe about the consequences of his plea and that Idigbe had signed an acknowledgment that he was entering the plea fully aware of its consequences, as well as an application for deferred adjudication and a statement that he understood his constitutional trial rights and freely and voluntarily waived each and every one. And the State argued that Idigbe had failed to prove that his plea was involuntary, attaching a subpoena application for Akinwunmi and her friend who had witnessed the assault that showed Idigbe was scheduled for a jury trial on November 8, 2010. The State attached a certification of call for November 5, 2010, to illustrate that Idigbe's statements in his application about his timely presence in the courtroom and his presence outside the courtroom were not credible. The State attached Idigbe's signed admonishments for deferred adjudication and waiver of trial rights, as well as his application for deferred adjudication and an officer notification of jury trial showing Idigbe's jury trial date as Monday, November 8, 2010.

Finally, the State argued that Idigbe's allegations did not establish that his unnamed attorney coerced Idigbe or provided any misrepresentations, stating,

> [Idigbe] was lawfully arrested for failure to appear; [Idigbe's] own allegations show that his attorney merely informed him that he could wait in jail over the weekend before his trial, or he could be released

7

immediately if he wanted to plead guilty and accept the State's offer of deferred adjudication. Providing such accurate information was not coercion to enter a plea, but rather giving information important to [Idigbe] so that he could make an informed decision.

The habeas court denied Idigbe's petition and adopted the State's proposed findings of fact and conclusions of law. The habeas court made the following findings of fact:

1. On November 5, 2010, Applicant pleaded guilty to the misdemeanor offense of Assault--Family Violence and was placed on deferred adjudication community supervision for a term of 12 months.

2. Applicant fulfilled all his conditions of community supervision, and he was discharged on November 21, 2011, and further proceedings were dismissed.

3. The affidavit provided by the complainant and attached to Applicant's writ application did not represent newly discovered or newly available evidence, as Applicant and the State knew before Applicant entered his plea that Ms. Akinwunmi had a change of heart about her earlier assertions to a police officer that she had been assaulted by Applicant.

4. Considering the statements made by Ms. Akinwunmi to the responding police officer, the fact that another witness was present at the time of the assault, the fact that photographs were taken of the complainant's injuries, and the complainant's self-interest in protecting the father of her child, the Court finds that Ms. Akinwunmi's claim in her affidavit that Applicant did not assault her is not credible.

5. Applicant delayed in making his involuntary plea claim until approximately two years after he entered his plea and one year after he satisfied all the conditions of his community supervision and was judicially discharged from community supervision and all proceedings dismissed.

6. At the time of his plea, Applicant acknowledged he was entering the plea fully aware of its consequences and that he was "freely and voluntarily" waiving his constitutional trial rights.

8

7.    The record shows that Applicant failed to timely appear for his court setting on the Friday before his Monday trial was scheduled to begin. Applicant's claim in his writ that he was in the hallway is not credible.

8.    Applicant's attorney did not coerce Applicant to enter a plea of guilty, but merely communicated the options facing Applicant following his incarceration for failure to timely appear for his court setting.

9.    Under all the circumstances in this case, including the strong evidence against Applicant and the unlikely chance of an acquittal by a jury, Applicant's two-year delay in challenging his plea, his sworn representations at the time he entered his plea, his misrepresentations of why the Court ordered his arrest, and the proper and noncoercive advice provided by his unnamed attorney, the Court finds that Applicant accepted the State's offer of deferred adjudication and a modest fine because Applicant had reasonably concluded that it was in his best interest to do so, not by any coercion by his attorney.

The habeas court concluded that Idigbe's claim of actual innocence failed because it was not based on newly discovered evidence or on credible and convincing evidence. It also concluded that Idigbe's sworn representations as to the voluntariness of his guilty plea, when combined with his two-year delay after entering the plea, and year-long delay after being discharged from community supervision, weighed against Idigbe's claim that his plea was involuntary. And it ultimately concluded that "[u]nder all of the circumstances of this case, as referenced in finding number 9, [Idigbe] has not proven by a preponderance of the credible evidence that his plea was not voluntary." This appeal followed.[3]

---

[3]The official court reporter notified this court that there is no reporter's record of the denial of application for writ of habeas corpus in this case, and we did not request briefing. See Tex. R. App. P. 31.1, 31.2.

9

*See* Tex. Code Crim. Proc. Ann. art. 11.072, § 8 (West 2005) (stating that if an application is denied in whole or part, the applicant may appeal under article 44.02 and rule of appellate procedure 31); *Ex parte Villanueva*, 252 S.W.3d 391, 397 (Tex. Crim. App. 2008) ("[T]he appealability of an application for writ of habeas corpus filed under Article 11.072 following a disposition by the district court is controlled by Section 8 of Article 11.072.").

### III. Discussion

The sole purpose of an appeal in a habeas corpus proceeding is to do substantial justice to the parties. *See* Tex. R. App. P. 31.2. Therefore, this appeal will be determined on the law and the facts shown by the record. *See id.*

In an article 11.072 appeal, absent an abuse of discretion, we must affirm the habeas court's decision on whether to grant or deny the relief requested in a habeas application. *See Ex parte Mello*, 355 S.W.3d 827, 832 (Tex. App.—Fort Worth 2011, pet. ref'd) (op. on reh'g) (citing *Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex. Crim. App. 2011)). We review the evidence in the light most favorable to the habeas court's ruling and afford great deference to its findings of fact and conclusions of law that are supported by the record, even when the findings are based on affidavits rather than live testimony. *Id.* We also afford great deference to the habeas court's application of the law to the facts, to the extent that the resolution of the ultimate question turns on an evaluation of credibility and demeanor. *Id.* However, if the resolution of the ultimate question turns on an application of legal standards, we review the determination de novo. *Id.*

## A. Actual Innocence

Idigbe's first ground that he presented in the habeas court was his actual innocence of the offense to which he pleaded guilty. In reviewing this claim, the habeas court must first consider whether the applicant presented newly discovered evidence that affirmatively establishes his innocence. *Id.* at 831. If the applicant presents such evidence, the habeas court then must determine whether the applicant proved by clear and convincing evidence that no reasonable juror would have convicted him in light of the newly discovered evidence, after balancing the "new" evidence against the "old" inculpatory evidence. *Id.* If the applicant entered a guilty plea, the plea—along with any evidence entered or stipulation to the evidence that supports the plea—must be considered in weighing the old evidence against the new evidence. *Id.*

Here, the habeas court found, and the record reflects, that Akinwunmi's affidavit did not represent newly discovered or newly available evidence in light of the affidavit of nonprosecution that she filed in March 2010, months before Idigbe entered his guilty plea. Therefore, the habeas court could have concluded its analysis when it found that Idigbe failed to provide affirmative newly discovered evidence of his innocence. *See id.* at 839; *cf. Ex parte Jiminez*, 364 S.W.3d 866, 874–75 (Tex. Crim. App. 2012) (noting that neither the habeas judge nor the applicant pointed to any significantly "new" or materially "different" expert opinions than those already expressed by a different expert at trial, even though

11

the new experts may have been more highly qualified), *cert. denied,* 133 S. Ct. 834 (2013).

Nonetheless, the habeas court continued its analysis, also finding that when comparing Akinwunmi's affidavit to her statements made to the responding police officer at the time of the offense and the other, "old" inculpatory evidence, Akinwunmi's claim that Idigbe had not assaulted her was not credible. Both of the habeas court's findings are supported by the record and support the habeas court's conclusion that Idigbe failed to prove by clear and convincing evidence that no reasonable juror would have convicted him in light of the "new" evidence in Akinwumi's affidavit. *See Mello*, 355 S.W.3d at 839. Because we must afford great deference to the habeas court's findings of facts and conclusions of law— particularly with regard to its credibility determinations—we cannot say that it abused its discretion by denying Idigbe's application on this ground. *See id.* at 832, 839–40.

## B. Involuntary Plea

Idigbe's second ground involved the voluntariness of his guilty plea. The test for determining the validity of a plea is whether it represents a voluntary and intelligent choice among alternative courses of action open to the defendant. *Ex parte Karlson*, 282 S.W.3d 118, 129 (Tex. App.—Fort Worth 2009, pet. ref'd). A guilty plea made by a defendant fully aware of the plea's direct consequences must stand unless it was induced by threats, misrepresentations, or promises that are by their nature improper as having no proper relationship to the

12

prosecutor's business. *Ex parte Morrow*, 952 S.W.2d 530, 534–35 (Tex. Crim. App. 1997), *cert. denied*, 525 U.S. 810 (1998). In a post-conviction habeas proceeding in which the applicant claims that his guilty plea was involuntary, the applicant must prove the claim by a preponderance of the evidence. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App.), *cert. denied*, 549 U.S. 1052 (2006). An applicant's delay in seeking habeas relief may prejudice his claim's credibility, and his sworn representation that his guilty plea is voluntary "constitutes a formidable barrier in any subsequent collateral proceedings." *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 73–74, 97 S. Ct. 1621, 1629 (1977)).

Here, the habeas court found that Idigbe delayed making his involuntary plea claim until two years after he had entered his plea and a year after he had been successfully discharged from community supervision, that Idigbe had made a sworn acknowledgment at the time of his plea that he was fully aware of his plea's consequences and had "freely and voluntarily" waived his constitutional trial rights, and that—based on the certificate of call—Idigbe had failed to timely appear for his court setting. It also expressly found that Idigbe's claim that he was in the hallway was not credible and that the defense attorney did not coerce Idigbe into pleading guilty but rather communicated the options facing Idigbe following his incarceration for failure to timely appear for his court setting that day. And it ultimately found that based on the above, Idigbe's decision to plead guilty in exchange for deferred adjudication and a fine was voluntary. The record, as set out above in our factual recitation, supports all of these findings,

13

and there is no evidence in the record to show that anyone threatened Idigbe or made misrepresentations or improper promises to secure his guilty plea. Therefore, we can discern no abuse of discretion by the habeas court by denying Idigbe's application on his second ground.

## IV.  Conclusion

We affirm the habeas court's judgment denying relief.


PER CURIAM


PANEL:  MCCOY, DAUPHINOT, and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 28, 2013

14