

**NUMBER 13-17-00462-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## EX PARTE MELY SALDANA

**On appeal from the 430th District Court
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Justices Contreras, Longoria, and Hinojosa
Memorandum Opinion by Justice Longoria**

The State appeals the granting of appellee Mely Saldana's application for writ of habeas corpus. The State contends the habeas court erred by: (1) determining appellee to be actually innocent; (2) declaring appellee not guilty; and (3) granting relief on the basis of ineffective assistance of counsel. The State further argues that the judgment should be reformed as to the fine imposed. We reverse and render judgment denying Saldana's application for writ of habeas corpus.

## I. BACKGROUND

Saldana was indicted for the offense of injury to a child by omission. *See* TEX. PENAL CODE ANN. § 22.04(a)(1), (b)(1) (West, Westlaw through 2017 1st C.S.). Saldana failed to appear and a judgment nisi was rendered and a capias was issued for her arrest. Saldana was later taken into custody pursuant to the capias. Saldana entered a plea of guilty as to the lesser included offense of reckless injury to a child, by omission, *see id*. § 22.04(a)(3), (b)(1), (f), in exchange for the State's recommendation that her sentence be suspended and she be placed on community supervision. The trial court accepted Saldana's plea, pronounced sentence, and rendered judgment in accordance with the agreements and stipulations of the parties. Saldana then filed her application for writ of habeas corpus alleging deprivation of her Sixth Amendment right to effective counsel and her right to testify.

In her application, Saldana states that she "is not guilty of the alleged offense." Saldana's application then details the events and circumstances leading up to her arrest. She states that on the night her son was injured, her estranged husband had been arguing with her son and "pushed [her] son and he fell to the ground, injuring his foot." She alleges that her husband then threatened her not to tell the police about what had happened. The next day, rather than taking her son to the hospital to assess his injury, she believed it was best to take her son to a "healer" because she was afraid the hospital would call the police. The "healer" massaged his foot in an attempt to alleviate his pain. Saldana's amended application and her brief in support of her amended application offer contradictory information as to what occurred next. As stated in her amended application, a few weeks after the "healer," Saldana's son was brought to the hospital by a concerned neighbor and Saldana was then brought in for questioning by the McAllen Police Department. However,

2

according to her brief in support of the amended application, Saldana claims she brought her son to a doctor the day after the "healer," but no x-rays were taken. Her brief then goes on to say Saldana was the one who took her son to the hospital six days after the injury and her son's foot was determined to be fractured. The brief also states that Saldana called the police herself. Saldana was ultimately charged with injury to a child.

Saldana argues in her application that her guilty plea was a result of ineffective assistance of counsel. She argues that her attorney disregarded her claims of innocence and told her that she needed to plead guilty in order for her son to be released from CPS custody. Saldana further argues that her attorney was "worried more with expediency" than with justice for Saldana.

A hearing was held on the application for writ of habeas corpus. During the hearing, Saldana testified that she only met with her lawyer for "like ten minutes" prior to her plea hearing. Saldana further testified that she told her attorney that she had taken her son to a healer and to a doctor, and that she explained the circumstances of the injury. She told the habeas court that her attorney did not inform her that she could have a trial, testify on her own behalf, or that her conviction would lead to deportation.

Saldana's attorney for the underlying plea agreement, Sylvia Vega-Gonzalez, testified that she was appointed to defend Saldana on the underlying injury to a child charge. Vega-Gonzalez testified that she does not recall specifically how long she and Saldana met, but she does recall discussing the case with Saldana and being told of the urgency to get her son out of a detention facility. Vega-Gonzalez testified that Saldana gave her the information regarding where her son was being held and that Vega-Gonzalez called the detention center herself to confirm the information. Vega-Gonzalez was told by

3

Saldana and the detention center that Saldana's son would be released to Saldana's custody once judgment was rendered in the underlying case. Vega-Gonzalez further testified that Saldana was very concerned for her son and was "in a desperate state." Vega-Gonzalez testified that she explained to Saldana what a judgment meant, what the plea of guilty meant, and her other options. She recalls that Saldana wanted a resolution the same day in order to obtain custody of her son. Vega-Gonzalez stated that she explained to Saldana all of her rights and the deportation consequences of her plea. According to Vega-Gonzalez, Saldana's primary objective was getting her son out of the detention center that same day. Vega-Gonzalez testified that she reviewed the statute under which Saldana was being charged to determine if Saldana's actions were within the confines of injury to a child by omission, and she was able to determine they were. Furthermore, Vega-Gonzalez testified that Saldana's objective to enter into a guilty plea that day was not unethical, illegal, or improper.

Saldana's then eighteen-year-old son Alan, the victim in the underlying injury to a child charge, also testified. He explained the events leading up to his injury, which was caused by his step-father hitting him when he was approximately fourteen years old. He explained that his mother brought him to a masseuse after the injury, and they told his mother that his foot was broken and that she should bring him to the hospital. He testified that his mother gave him medicine for the pain and later brought him to the hospital.

Following the hearing and additional briefing by both parties, the application for habeas corpus relief was granted on both grounds asserted by Saldana. This appeal followed.

## II. HABEAS CORPUS RELIEF

4

The State raises three issues arguing that the granting of habeas relief was in error, contending that the habeas court erred by: (1) granting Saldana relief on actual innocence grounds; (2) finding Saldana not guilty; and (3) granting relief on the basis of ineffective assistance of counsel.

## A.    Standard of Review

In reviewing the habeas court's ruling on a habeas corpus application, we must review the record evidence in the light most favorable to the trial court's ruling, and we must uphold that ruling absent an abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). We decide whether a trial court abused its discretion by determining whether the court acted without reference to any guiding rules or principles, or in other words, whether the court acted arbitrarily or unreasonably. *Lyles v. State*, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993). A trial court abuses its discretion when its decision lies outside of the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

## B.    Finding of Actual Innocence

The State argues that the trial court erred by granting Saldana relief on actual innocence grounds and finding Saldana "not guilty" as a matter of law, claiming that she did not make the proper showing that "she did not commit the offense" as "substantiated by new evidence."

### 1.    Applicable Law

There are two types of actual-innocence claims that may be raised on an application for a post-conviction writ of habeas corpus. First, a freestanding innocence claim, also known as a *Herrera*-type claim, involves a substantive claim in which an

5

applicant asserts his bare claim of innocence based solely on newly discovered evidence. *Herrera v. Collins*, 506 U.S. 390, 400–01 (1993); *see Ex parte Franklin*, 72 S.W.3d 671, 675 (Tex. Crim. App. 2002); *Ex parte Elizondo*, 947 S.W.2d 202, 208 (Tex. Crim. App. 1996). A claim that a witness's recantation unquestionably establishes innocence is properly understood as a *Herrera*-type claim. *See Franklin*, 72 S.W.3d at 675. The second type of claim, a *Schlup*-type claim, is a "procedural claim in which applicant's claim of innocence does not provide a basis for relief, but is tied to a showing of constitutional error at trial." *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 314 (1995)). In *Schlup*, the applicant argued that he received ineffective assistance of counsel and that the prosecution withheld evidence. *Schlup*, 513 U.S. at 314. Schlup's claim of innocence was "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id*. at 315.

For a *Herrera*-type claim, the bare claim of innocence would fail unless the court was convinced that the new facts "unquestionably establish" applicant's innocence. *Id*. at 317; *Franklin*, 72 S.W.3d at 676. However, in a *Schlup*-type situation, the petitioner must show only that the constitutional error "probably resulted" in the conviction of one who was actually innocent. *Schlup*, 513 U.S. at 326–27. Establishing entitlement to relief on an actual-innocence claim in initial post-conviction habeas proceedings requires a showing of new evidence. *Franklin*, 72 S.W.3d at 671.

In a *Herrera*-type claim, evidence is considered "newly discovered" if it was not known to the applicant at the time of the trial, plea, or post-trial motions and could not have been known to him even with the exercise of due diligence. *Ex parte Brown*, 205 S.W.3d 538, 545 (Tex. Crim. App. 2006). To establish a claim of actual innocence, "an applicant

must show 'by clear and convincing evidence, that despite the evidence of guilt that supports the conviction, no reasonable juror could have found the applicant guilty in light of the new evidence.'" *Id*. (quoting *Ex parte Tuley*, 109 S.W.3d 388, 392 (Tex. Crim. App. 2002)). "This showing must overcome the presumption that the conviction is valid and it must unquestionably establish applicant's innocence." *Id*. In deciding this issue, the trial court examines the "newly discovered evidence" and determines whether the "new" evidence, when balanced against the "old" inculpatory evidence, unquestionably establishes the applicant's innocence. *Ex parte Thompson*, 153 S.W.3d 416, 426 (Tex. Crim. App. 2005). The court of criminal appeals has noted that, "[e]stablishing a bare claim of actual innocence is a Herculean task." *Brown*, 205 S.W.3d at 545.

If the applicant entered a guilty plea, the guilty plea—along with any evidence entered, or stipulation to the evidence, supporting the plea—must be considered in weighing the old evidence against the new evidence. *Tuley*, 109 S.W.3d at 392 ("A convicting court is not free to ignore a guilty plea when reviewing a collateral attack."). Courts should "give great respect to knowing, voluntary, and intelligent pleas of guilty." *Id*. at 391.

### 2. Analysis

Saldana's argument of actual innocence cannot be construed as a *Schlup* claim because a *Schlup* claim may not be brought in an initial habeas application, as the constitutional claim of ineffective assistance of counsel is not yet procedurally barred. *Ex parte Villegas*, 415 S.W.3d 885, 887 (Tex. Crim. App. 2013) (holding that "[b]ecause Applicant's ineffective assistance of counsel claims are not procedurally barred as subsequent, a *Schlup* innocence claim dependent on them is improper."); *see also Ex*

7

*parte Fournier*, 473 S.W.3d 789, 794 (Tex. Crim. App. 2015) (concluding *Schlup* no longer provides basis for review in Texas following enactment of Texas's abuse-of-the writ statutes and further noting "[b]ecause Applicant's claims are made in initial applications, we are not faced with procedurally barred claims"). Therefore, we review Saldana's claim of actual innocence as a *Herrera*-type claim to determine if Saldana presented new evidence that "unquestionably establish[es]" her innocence. *See Schlup*, 513 U.S. at 317.

Evidence that was available at time of trial and which could have been secured through the exercise of diligence is not "newly discovered evidence" for purposes of claiming entitlement to post-judgment relief. *Ward v. State*, 125 S.W.2d 290. 371 (Tex. Crim. App. 1938) (per curiam). Here, while Saldana may have testified to the underlying facts of the incident involving the injury to her son for the first time during the habeas hearing, the facts were not unknown to her at the time of her guilty plea, and thus cannot be considered newly discovered evidence. Saldana fails in her *Herrera* claim because she did not provide the court with newly discovered evidence that constitutes affirmative evidence of her innocence nor did she meet her burden to show that no reasonable juror would have convicted her in light of this alleged evidence. *See Tuley*, 109 S.W.3d at 392 (finding of entitlement to relief on an actual innocence claim following a guilty plea requires the applicant to prove the existence of new evidence). We conclude the habeas court abused its discretion by granting relief on the basis of actual innocence. We sustain the State's first and second issues. *See Villegas*, 415 S.W.3d at 887.

## C.    Finding of Ineffective Assistance of Counsel

The State argues in its third issue that the trial court erred by granting habeas relief on Saldana's ineffective assistance of counsel claim.

8

### 1.    Applicable Law

To be valid, a plea must be entered voluntarily, knowingly, and intelligently.  *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(b) (West, Westlaw through 2017 1st C.S.); *Fuller v. State*, 253 S.W.3d 220, 229 (Tex. Crim. App. 2008); *Ex parte Karlson*, 282 S.W.3d 118, 128–29 (Tex. App.—Fort Worth 2009, pet. ref'd).  The Sixth Amendment to the United States Constitution guarantees a defendant effective assistance of counsel in a plea hearing. *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970).  If counsel is ineffective at the plea hearing, a defendant may be prevented from entering a knowing and voluntary plea.  *See Hill v. Lockhart*, 474 U.S. 52, 56–60 (1985).

We apply the two-pronged test of *Strickland v. Washington* to challenges to pleas premised on ineffective assistance of counsel.  *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).  Specifically, when a person challenges the validity of a plea entered upon the advice of counsel, contending that his counsel was ineffective, the voluntariness of the plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty to the charged offense and would have insisted on going to trial.  *Id*.  Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.  *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance

9

falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006).

The Texas Court of Criminal Appeals has said that "[v]irtually every fact finding involves a credibility determination" and has "repeatedly recognized that the fact finder is the exclusive judge of the credibility of the witnesses." *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996). When the trial court's findings of fact in a habeas corpus proceeding are supported by the record, they should be accepted. *Ex parte Evans*, 964 S.W.2d 643, 648 (Tex. Crim. App. 1998); *Ex parte Jarrett*, 891 S.W.2d 935, 940 (Tex. Crim. App. 1994). We "afford almost total deference to a trial court's factual findings in habeas proceedings, especially when those findings are based upon credibility and demeanor." *Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004); *see Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006).

### 2. Pertinent Facts

After hearing testimony from Saldana, Saldana's trial counsel, and Saldana's son, as well as argument from both parties' attorneys on the application for habeas relief, the habeas court entered findings of fact, in relevant part, stating:

VIII. Adequacy of Consultation and investigation

(1)   The court finds that trial counsel testified that Applicant placed expediency over all other concerns and issues.

(2)   The Court finds that trial counsel testified she advised applicant to permit delay for further investigation and consultation.

(3)   The Court finds that trial counsel testified that Applicant's decision to enter a plea of guilty on that day was against trial counsel's advice.

(4)   The Court finds that trial counsel failed to state on the record at trial that the plea of guilty was being entered against her legal advice.

10

(5)     The Court finds that the victim was identified as Joseph in the Indictment. The defendant's son's name is, Alan Oziel Felipe Saldana.

(6)     The Court finds that the only Joseph in the entirety of the records is the attending nurse on the date of February 12, 2014 as Joseph Viscipulo.

(7)     Court finds that at the plea hearing, the record reflects that the defendant never admitted to the facts establishing the elements of the offense.

(8)     Court finds when the defendant was asked "Are you pleading guilty because you indeed [a]re guilty? Did you do this?" her response was "I didn't do it." The court then asked "What did she say?" and it was defendant's counsel who stated the facts to establish the elements of the offense and the defendant was never asked by the Court if defendant's counsel's recitation of those facts were accurate, if she admitted to those facts.

(9)     The court finds that the performance of the trial counsel regarding consultation and investigation was deficient in light of the record and trial testimony including the statement by the applicant that she "did not do it."

(10)    Applicant was convicted as a result of deficient legal representation on that date.

During her testimony, Saldana told the trial court that she only met with her trial counsel for "like ten minutes" before entering into a guilty plea. Saldana testified that she informed her lawyer of the surrounding facts of the case, including that she brought her son in for treatment through other providers before bringing him to the hospital. She further stated that her attorney did not advise her of her right to a trial, her right to contest the allegations against her, her right to testify on her own behalf, or that her conviction would lead to deportation.

Vega-Gonzalez's testimony was contradictory to Saldana's. Vega-Gonzalez testified that she did inform Saldana of all her rights to trial, to testify, and to defend herself,

11

as well as the deportation consequences. Gonzalez testified that while she was not certain exactly how long she spent with Saldana before the plea, her recollection was that she met with Saldana most of the morning before the plea was entered into. Gonzalez testified that she recalled Saldana's primary focus was on resolving the case with a judgment that same day, in order to have her son released to her. Gonzalez recalled making telephone contact with the agency holding Saldana's son, per Saldana's request, to confirm that they would release Saldana's son when a judgment was entered.

The trial court found that Vega-Gonzalez's representation of Saldana was deficient as to her consultation and investigation prior to the plea.

### 3.    Analysis

In the context of a collateral challenge to a guilty plea, the focus of the inquiry into whether a habeas corpus applicant was prejudiced by counsel's errors is on whether counsel's constitutionally ineffective performance affected the outcome of the plea process, and on whether a defendant has shown that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Ex parte Uribe*, 516 S.W.3d 658, 666 (Tex. App.—Fort Worth 2017, pet. ref'd).

The test for determining the validity of a plea is whether it represents a voluntary and intelligent choice among alternative courses of action open to the defendant. *Ex parte Karlson*, 282 S.W.3d 118, 129 (Tex. App.—Fort Worth 2009, pet. ref'd). To meet the burden under *Strickland*'s prejudice prong, the applicant must convince the court that a decision to reject the plea bargain would have been rational under the circumstances, but she need not show that she would have received a more favorable outcome at trial. *Johnson v. State*, 169 S.W.3d 223, 231 (Tex. Crim. App. 2005). The test is objective

12

and turns on what a reasonable person in the defendant's shoes would do. *Ex parte Ali*, 368 S.W.3d 827, 835 (Tex. App.—Austin 2012, pet. ref'd). In determining whether a defendant would not have pleaded guilty but for counsel's deficient advice, we consider the circumstances surrounding the plea and the gravity of the alleged failure material to that determination. *Ex parte Moreno*, 382 S.W.3d 523, 528 (Tex. App.—Fort Worth 2012, pet. ref'd) (citing *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999)); *Uribe*, 516 S.W.3d at 666.

In addition to the testimony during the hearing, the habeas court had the record of the plea proceedings for review. In reviewing the record, the habeas court noted that Saldana never truly admitted to the allegation, and that she denied being guilty, stating "I didn't do it" when asked if she was indeed guilty. Additionally, during the hearing on Saldana's application for writ of habeas corpus, the habeas court took note that Saldana was not admonished on the record as to the lesser included offense to which she was pleading guilty. Presented with the record, as well as the conflicting testimony of Saldana and Vega-Gonzalez, the habeas court found Saldana received ineffective assistance of counsel when entering into a plea of guilty, finding that Saldana "was convicted as a result of deficient legal representation."

Saldana had the opportunity to develop a record demonstrating her alleged ineffective assistance of counsel claims under the two-prong *Strickland* test. Vega-Gonzalez was afforded the opportunity to explain her actions as trial counsel. She testified regarding her decisions being based on her client's demands and explained that she investigated the situation as necessary to fulfil her client's wishes. Saldana does not argue that expediency was not her goal on the day of her plea, nor does she disagree that she

13

informed her attorney on that day that she wished to get a final judgment, through a plea, in order to have her son returned to her custody. However, when presented with contradictory testimony, we are required to afford "almost total deference to a trial court's factual findings in habeas proceedings, especially when those findings are based upon credibility and demeanor." *White*, 160 S.W.3d at 50. It is clear the habeas court took Saldana's testimony as true and as such, deferring to that finding, we conclude that the trial court did not err in finding deficient performance of counsel.

The State also challenges the habeas court's assessment as to whether Saldana has shown that but for counsel's errors, she would not have pleaded guilty and would have insisted on going to trial. *Uribe*, 516 S.W.3d at 658. Saldana presented no testimony or argument as to how the outcome would have been different. During the underlying arraignment hearing at which Saldana gave her guilty plea, Saldana was admonished by the court of the ramifications of her actions, should she choose to plead guilty. The court informed her "you very well will be deported [sic]," to which she replied that she understood. Furthermore, the trial court judge asked Saldana about the signed Waiver of Rights and Consent to Stipulation of Evidence that stated she did not want to go to trial or confront the witnesses against her. Saldana confirmed in the trial court that her attorney went over the waiver with her and that she signed the document herself. From the record, Saldana makes it clear that she understood the consequences of her guilty plea and still chose to plead that way. She did not refute the testimony that her main concern was getting a judgment that day in order to have her son placed back in her custody, nor did she expressly allege that she would have insisted on going to trial, rather than pleading guilty, a necessary component of the second prong of *Strickland*. *See Ex parte Torres*,

14

483 S.W.3d 35, 51 (Tex. Crim. App. 2016) (holding that although there was substantial evidence of deficient performance of counsel, appellant failed to present any "evidence as to how he was prejudiced and in the absence of any credible facts in the record showing that, but for counsel's erroneous advice, appellant would have rationally decided to reject the plea bargain and instead pursue a trial").  We observe that appellant failed to expressly allege, either in her pleadings to the habeas court or in her testimony at the hearing, that, had she known the full immigration consequences of her guilty plea, or had she fully understood the consequences of her guilty plea, she would have instead decided to plead not guilty and avail herself of a trial.  *Id*. (citing *Hill v. Lockhart*, 474 U.S. 52, 59–60 (1985)).  Therefore, Saldana failed to establish the second prong of the *Strickland* test in her ineffective assistance claim.  We sustain the State's third issue.

### III.    REFORMATION OF ERROR IN THE JUDGMENT

The State's fourth issue contends that the written judgment of conviction and order of community supervision imposes a punishment that includes an incorrect fine of $1,000.00.  On review of the record, we observe that the trial court orally pronounced in open court that the fine be assessed at $250.00, not $1,000.00.

This Court has authority to modify incorrect judgments when the necessary information is available to do so.  *See* TEX. R. APP. P. 43.2(b) (authorizing court of appeals to modify trial court's judgment and affirm it as modified); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (concluding that Texas Rules of Appellate Procedure empower courts of appeals to reform judgments); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (appellate court has authority to reform a judgment to include an affirmative finding to make the record speak the truth when the matter has been called to

its attention by any source).  Accordingly, we sustain the State's fourth issue and we modify the judgment of conviction and order of community service to reflect that the fine imposed is $250.00.

## IV.    CONCLUSION

We reverse the trial court's judgment granting Saldana's habeas corpus relief and render judgment denying Saldana's application for writ of habeas corpus.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
11th day of October, 2018.